11 Kan. App. 2d 531 (1986)
729 P.2d 1234
In the Interest of H.D., C.D., and C.D., Children Under the Age of Eighteen Years.
No. 58,310
Court of Appeals of Kansas.
Opinion filed December 11, 1986.
Douglas B. Myers, of Dodge City, and Henry A. Goetz, of Dodge City, for appellant.
Daniel L. Love, county attorney, and Leigh Hood, assistant county attorney, for appellee.
Douglas Brunson, guardian ad litem.
Before DAVIS, P.J., C. PHILLIP ALDRICH, District Judge, assigned, and BARRY A. BENNINGTON, District Judge, assigned.
*532 DAVIS, J.:
This appeal from termination of parental rights involves a question of an Indian tribe's right of notification of involuntary proceedings involving Indian children. Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 et seq. (1982). In this case, parental rights of both the natural mother and father were terminated by the district magistrate judge. Both parents appealed to the district court. On May 2, 1985, upon de novo review, the district judge ordered that parental rights of both parents be terminated. Both parents appealed to this court; the mother subsequently abandoned her appeal.
The mother is 15/32 degree Indian blood of the Cherokee Tribe. She applied for tribal membership prior to the severance hearing but did not become an enrolled member of the tribe until approximately six weeks after the magistrate severed parental rights. The State contends that because the father is not Indian he has no standing to argue the application of the Act and that the mother's abandonment of her appeal renders this case moot. This contention is without merit. Under the Act, "`parent' means any biological parent or parents of an Indian child...." 25 U.S.C. § 1903(9) (1982).
The father claims that the Indian Child Welfare Act of 1978, 25 U.S.C. § 1901 et seq., applied to the proceedings below and that the court's failure to follow the provisions of the Act invalidates the termination order. Although we do not decide the question of the applicability of the Act, we agree that the court's failure to direct that proper notice be served upon the tribe or Secretary of the Interior renders the termination order invalid.
K.S.A. 1985 Supp. 38-1503 sets forth the court's jurisdiction over proceedings under the Kansas Code for Care of Children:
"Jurisdiction. (a) Proceedings concerning any child who appears to be a child in need of care shall be governed by this code, except in those instances when the Indian child welfare act of 1978 (25 USC §§ 1901 et seq.) applies." (Emphasis added.)
The Indian Child Welfare Act (hereinafter Act) expressly declares congressional policy:
"The Congress hereby declares that it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." 25 U.S.C. § 1902 (1982).
*533 See, e.g., In re Adoption of Baby Boy L., 231 Kan. 199, 205, 643 P.2d 168 (1982). The policy of the Act is further discussed in the Guidelines for State Courts in Indian Child Custody Proceedings:
"Congress through the Indian Child Welfare Act has expressed its clear preference for keeping Indian children with their families, deferring to tribal judgment on matters concerning the custody of tribal children, and placing Indian children who must be removed from their homes within their own families or Indian tribes. Proceedings in state courts involving the custody of Indian children shall follow strict procedures and meet stringent requirements to justify any result in an individual case contrary to these preferences. The Indian Child Welfare Act, the federal regulations implementing the Act, the recommended guidelines and any state statutes, regulations or rules promulgated to implement the Act shall be liberally construed in favor of a result that is consistent with these preferences. Any ambiguities in any of such statutes, regulations, rules or guidelines shall be resolved in favor of the result that is most consistent with these preferences." (Emphasis added.) 44 Fed. Reg. 67,585-86 (1979).
In order for the Act to apply, two prerequisites must exist: "(1) a `child custody proceeding' (2) involving an `Indian child,' as those terms are defined in the Act." In re Adoption of Baby Boy L., 231 Kan. at 207.
The definitional section of the Act provides in part:
"For the purposes of this chapter ... the term 
"(1) `child custody proceeding' shall mean and include 
....
"(ii) `termination of parental rights' which shall mean any action resulting in the termination of the parent-child relationship;
....
"(4) `Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe; ..." 25 U.S.C. § 1903.
Clearly, this was a child custody proceeding within the meaning of the Act. The magistrate, however, rejected the parents' claim that the children were Indian. Prior to the termination hearing before the magistrate, the parents filed a petition to transfer jurisdiction to the tribal court. The magistrate denied the petition "for the reason that the biological parents are not as yet enrolled as members of the Cherokee Indian Nations and therefore pursuant to 25 USC section 1903(4) the minor children do not meet the definition of Indian children at this time."
*534 The parents resubmitted the petition to transfer jurisdiction at the termination hearing and again raised the issue of the applicability of the Indian Child Welfare Act. The magistrate denied the petition a second time, reasoning that mother and children were not enrolled when the action commenced. The court concluded that the tribe had the opportunity "of being aware of these proceedings by way of the Indian Welfare Agency with whom the [parents] were working," but expressed no interest in helping with enrollment or intervention.
Prior to de novo review by the district court, the mother became an enrolled member of the Cherokee Nations and the parents filed another motion to invoke the jurisdiction of the tribe pursuant to the Indian Child Welfare Act. The magistrate denied this third request on the ground that the mother was not an enrolled member of the tribe when the case was heard.
Both parents appealed to the district court. The district court terminated parental rights without mention of the Act.
Unlike the case of In re Adoption of Baby Boy L., 231 Kan. 199, we are not concerned with a determination of whether the Act applies. In this decision, we are concerned with the tribe's right to notification of involuntary proceedings where the court has reasonable grounds to believe a child subject to the proceeding is or may be an Indian child. 25 U.S.C. § 1912(a) (1982). In Baby Boy L., the Supreme Court noted:
"On April 1, 1981, it was brought to the court's attention that Perciado was an enrolled member of the Kiowa Tribe and that the federal Indian Child Welfare Act of 1978 might apply, and therefore the case was continued for thirty days to allow proper notice to be given to the Kiowa Tribe." (Emphasis added.) 231 Kan. at 202.
The tribe was properly notified and given the opportunity to be heard on the issue of the applicability of the Act. Baby Boy L., 231 Kan. at 202.
In this case, however, the Cherokee Tribe was never notified of the pendency of state court proceedings. Consequently, the tribe was denied the opportunity to be heard on the issue of whether the Act applied to the state court proceedings.
When and under what circumstances is tribal notice and opportunity to be heard regarding the applicability of the Act required? The Guidelines for State Courts set forth pretrial requirements, which include verification by the court of the child's Indian status:
*535 "B.1. Determination That Child Is an Indian
"(a) When a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe...." (Emphasis added.) 44 Fed. Reg. 67,586.
The Guidelines set forth circumstances that trigger an inquiry by the court and petitioners regarding the child's Indian status for purposes of the Act:
"(c) Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include but are not limited to the following:
"(i) Any party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child.
"(ii) Any public or state-licensed agency involved in child protection services or family support has discovered information which suggests that the child is an Indian child.
"(iii) The child who is the subject of the proceeding gives the court reason to believe he or she is an Indian child.
"(iv) The residence or the domicile of the child, his or her biological parents, or the Indian custodian is known by the court to be or is shown to be a predominantly Indian community.
"(v) An officer of the court involved in the proceeding has knowledge that the child may be an Indian child." 44 Fed. Reg. 67,586.
The Commentary to the pretrial requirements further provides:
"This guideline makes clear that the best source of information on whether a particular child is Indian is the tribe itself. It is the tribe's prerogative to determine membership criteria and to decide who meets those criteria. Cohen, Handbook of Federal Indian Law 133 (1942). Because of the Bureau of Indian Affairs' long experience in determining who is an Indian for a variety of purposes, its determinations are also entitled to great deference. See, e.g., United States v. Sandoval [231 U.S. 28, 58 L.Ed. 107, 34 S.Ct. 1 (1913)].
....
"... The Act mandates a tribal right of notice and intervention in involuntary proceedings but not in voluntary ones. Cf. 25 U.S.C. § 1912 with 25 U.S.C. § 1913...." (Emphasis added.) 44 Fed. Reg. 67,586.
The magistrate judge concluded that the Act did not apply based upon his finding the natural mother was not enrolled in the Cherokee Tribe at the time he terminated parental rights. We note that "[e]nrollment is not always required in order to be a member of a tribe. Some tribes do not have written rolls. Others have rolls that list only persons that were members as of a certain date. Enrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it *536 necessarily determinative. United States v. Broncheau, 597 F.2d 1260, 1263 (9th Cir.1979)." (Emphasis added.) 44 Fed. Reg. 67,586.
In this case, various circumstances, which existed throughout both the magistrate and district court proceedings, raised a reasonable question regarding the children's Indian status. Those circumstances include the following:
1. The three girls were first placed in temporary custody of the Ford County Department of Social and Rehabilitation Services (SRS) in July 1982.
The July 1982 court report prepared by the licensed social worker of the Dodge City SRS office states:
"The recommendation of this agency is that the girls remain in SRS custody pending further investigation of the background of the parents. It has been learned that the girl's [sic] natural mother is part Indian and the agency would recommend that the American Indian Law be further checked by the court." (Emphasis added.)
2. In August 1982, the social worker received a phone call from the mother and a caseworker with the Indian child welfare agency in Tulsa, Oklahoma. The mother informed the Ford County social worker that she was of Cherokee descent.
3. In November 1982, Ford County SRS contacted the Indian Health Care Resource Center in Tulsa, Oklahoma, and requested that a home study be completed.
4. In October 1984, after the magistrate severed parental rights, SRS notified 4 Tribes Social Services Program in Horton, Kansas, and Cherokee Nations in Tahlequah, Oklahoma, that the three girls were in SRS custody.
5. In March 1985, the parties stipulated to the mother's enrollment as a member of the Cherokee Nations.
SRS knew and informed the court very early in the pendency of these proceedings that these three children were of Indian descent.
Based upon the record and factors set forth above, we conclude that both the magistrate and district courts had reasonable grounds to believe the children involved in this proceeding are or may be Indian children.
In any involuntary proceeding conducted pursuant to the Code for Care of Children, K.S.A. 1985 Supp. 38-1501 et seq., when the court has reasonable grounds to believe a child involved in the proceeding is or may be an Indian child, the court *537 must direct that proper notice be served upon the tribe or Secretary of the Interior. The tribe must be given the opportunity to be heard on the issue of the applicability of the Indian Child Welfare Act to the involuntary proceedings.
The Act sets forth the notice requirements:
"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the Secretary in like manner, who shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe. No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the Secretary: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (Emphasis added.) 25 U.S.C. § 1912(a).
The Code of Federal Regulations provides, in part:
"(a) If the identity or location of the parents, Indian custodians or the Indian child's tribe cannot be determined, notice of the pendency of any involuntary child custody proceeding involving an Indian child in a state court shall be sent by registered mail with return receipt requested to the appropriate address listed in paragraph (b) of this section.
....
"(4) For proceedings in Kansas ... notice should be sent to the following address: Anadarko Area Director, Bureau of Indian Affairs, P.O. Box 368, Anadarko, Oklahoma 73005.
....
"(c) Notice shall include the following information if known:
"(1) Name of the Indian child, birthdate, birthplace,
"(2) Indian child's tribal affiliation,
"(3) Names of Indian child's parents or Indian custodians, including birthdate, birthplace, and mother's maiden name, and
"(4) A copy of the petition, complaint or other document by which the proceeding was initiated.
"(d) Upon receipt of the notice, the Bureau shall make a diligent effort to locate and notify the Indian child's tribe and the Indian child's parents or Indian custodians. Such notice may be by registered mail with return receipt requested or by personal service and shall include the information provided under paragraph (c) of this section in addition to the following:
"(1) A statement of the right of the biological parents, Indian custodians and the Indian tribe to intervene in the proceedings.
"(2) A statement that if the parent(s) or Indian custodian(s) is unable to afford counsel, counsel will be appointed to represent them.

*538 "(3) A statement of the right of the parents, the Indian custodians and the child's tribe to have, upon request, up to twenty additional days to prepare for the proceedings.
"(4) The location, mailing address and telephone number of the court.
"(5) A statement of the right of the parents, Indian custodians and the Indian child's tribe to petition the court for transfer of the proceeding to the child's tribal court, and their right to refuse to permit the case to be transferred.
"(6) A statement of the potential legal consequences of the proceedings on the future custodial and parental rights of the parents or Indian custodians.
"(7) A statement that, since child custody proceedings are usually conducted on a confidential basis, tribal officials should keep confidential the information contained in the notice concerning the particular proceeding and not reveal it to anyone who does not need the information in order to exercise the tribe's rights under the Act.
"(e) The Bureau shall have ten days, after receipt of the notice from the persons initiating the proceedings, to notify the child's tribe and parents or Indian custodians and send a copy of the notice to the court. If within the ten-day time period the Bureau is unable to verify that the child is in fact an Indian, or meets the criteria of an Indian child as defined in section (4) of the Act, or is unable to locate the parents or Indian custodians, the Bureau shall so inform the court prior to initiation of the proceedings and state how much more time, if any, it will need to complete the search. The Bureau shall complete its search efforts even if those efforts cannot be completed before the child custody proceeding begins.
"(f) Upon request from a potential participant in an anticipated Indian child custody proceeding, the Bureau shall attempt to identify and locate the Indian child's tribe, parents or Indian custodians for the person making the request." (Emphasis added.) 25 C.F.R. § 23.11 (1986).
The record does not reveal any communication between the Ford County Attorney's Office (on behalf of the court, K.S.A. 1985 Supp. 38-1510) and the Cherokee Nations of Oklahoma or the Secretary of the Interior.
Violation of the Indian Child Welfare Act notice provisions may be cause for invalidation of the proceedings:
"Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914 (1982).
Under the facts of this case, we find the termination of parental rights invalid because the court had reasonable grounds to believe that the children subject to the severance proceeding are or may be Indian children and failed to direct notice to the tribe or *539 Secretary of the Interior in accordance with the Act. 25 U.S.C. § 1912(a).
We therefore reverse the decision of the district court and remand this case for further proceedings consistent with this opinion.