233 Cal.App.3d 1414 (1991)
285 Cal. Rptr. 507
In re KAHLEN W., a Person Coming Under the Juvenile Court Law.
STANISLAUS COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
KATHLEEN D. et al., Defendants and Appellants. KATHLEEN D. et al., Petitioners,
v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent; STANISLAUS COUNTY DEPARTMENT OF SOCIAL SERVICES et al., Real Parties in Interest.
Docket Nos. F015175, F015499.
Court of Appeals of California, Fifth District.
September 6, 1991.
*1417 COUNSEL
Marilyn B. Miles, under appointment by the Court of Appeal, and Abby Abinanti for Defendants and Appellants and for Petitioners.
Michael H. Krausnick, County Counsel, and Harry P. Drabkin, Deputy County Counsel, for Plaintiff and Respondent and for Real Parties in Interest.
No appearance for Respondent Superior Court.
David M. Thompson, under appointment by the Court of Appeal, for Minor.
[Opinion certified for partial publication.[*]]
OPINION
FRANSON, J.[*] 

STATEMENT OF CASE
This case is a consolidated appeal and writ from an order of the Stanislaus County Juvenile Court setting a Welfare and Institutions Code section 366.26 hearing to determine whether parental rights should be terminated. Kahlen W., the minor daughter of Kathleen D. and Stephen W., is the subject of the controversy. Kahlen was removed from her parents' care on July 1, 1989. Stanislaus County Department of Social Services (DSS) filed a petition on July 5, 1989, alleging that Kahlen, then age 19 months, came within the provisions of Welfare and Institutions Code section 300, subdivision (b).
*1418 The minor was ordered detained July 6, 1989. The parents pleaded no contest to the petition on July 20, 1989, and the matter was set for disposition. On August 9, 1989, Kahlen was adjudged a dependent child and placed in the home of her adult half sister. A reunification plan was approved. Neither parent was present at the disposition hearing. A six-month review hearing was held on January 5, 1990, at which the court found reunification efforts to date had failed. The dispositional orders were renewed.
On July 2, 1990, a second six-month review hearing was held at which the court again renewed its earlier orders, again found reunification efforts had failed and set the matter for a review and permanent planning hearing under Welfare and Institutions Code section 366.21 for September 21, 1990. At the September hearing, Kathleen D. informed the court she was an American Indian (of the Miwok Tribe) and thus Kahlen was likely covered by the provisions of the Indian Child Welfare Act of 1978 (the Act), 25 United States Code section 1901 et seq.[1]
The court continued the hearing to December 11, 1990, and ordered DSS to contact the tribe and determine the child's status. On December 11, the court denied Kathleen D.'s request for a further continuance. After hearing testimony, the court continued Kahlen as a dependent child, ordered that Kahlen remain in her then current placement with fost-adopt parents, found reunification efforts unsuccessful, terminated reunification services, limited visitation, and set a Welfare and Institutions Code section 366.26 hearing for March 19, 1991, to determine whether parental rights should be terminated.
Kathleen D.'s request for rehearing was denied on December 20, 1990. The appeals followed. Stephen W. filed his appeal on December 28, 1990, and Kathleen D. filed hers on February 14, 1991. On February 22 and March 4, 1991, DSS filed its motions to dismiss the appeals, contending the December 11 order is nonappealable. A ruling on the motions was ordered deferred until consideration on the merits by order dated May 9, 1991.
On March 7, 1991, Kathleen D. filed a petition for writ of mandate and request for stay of further proceedings (F015499). This court declined to issue a writ of supersedeas on March 7. On April 8, Kathleen D. filed a request for stay of the permanency planning hearing, which this court granted on May 2. Also on May 2, this court ordered the petition for writ and the appeal consolidated. On May 13, Stephen W. filed his petition for writ of *1419 mandate. By order dated May 22, a ruling on the petition was deferred until resolution of the previously filed actions.

STATEMENT OF FACTS
On July 1, 1989, Kahlen was taken into police custody because her parents left her with a mentally deficient stranger and did not return. Kahlen was placed with her half sister, Kondi Olivera, on July 7. Kondi is married and has twin boys close in age to Kahlen. Kahlen stayed with Kondi for several months. Soon it became apparent reunification would most likely not be successful within the statutory 18-month period and DSS began to look for an appropriate long-term placement for Kahlen. DSS considered Kahlen to be highly adoptable and adoption to be the preferred disposition.
After serious consideration, Kondi decided she could not provide Kahlen with the long-term family commitment she needed. Kondi could not be Kahlen's mother, and although she cared for her sister, she could not parent Kahlen as her own child. Kondi was also not raised by Kathleen D.
With the help of Kondi and other maternal relatives, Kahlen was placed in May 1990 with a distant relative who was willing to adopt Kahlen if that were to become necessary. Kahlen adjusted well and lived with this family for a period of four months. In September 1990, DSS informed the court this family was experiencing a marital breakup and could no longer care for Kahlen. It was necessary to move Kahlen immediately. No other members of either parent's family came forward and Kahlen was placed in a nonrelative "fost-adopt" family. Kahlen would have been placed with a relative had one come forward. Three different relatives contacted DSS about caring for Kahlen after she was placed in the fost-adopt home.
Kathleen D. has a serious alcohol and substance abuse problem. During Kahlen's dependency, Kathleen D. has not complied with the terms of the reunification plan. Her abuse of alcohol and drugs has continued. She appeared at the December 11, 1990, hearing under the influence of alcohol. She was incarcerated for heroin use. Although she attended a 28-day detoxification program, she failed to participate in an out-patient substance abuse program as required under the reunification plan. Kathleen D. failed to maintain regular contact with Kahlen or to provide a home for Kahlen.
Stephen W. also has an alcohol and substance abuse problem as well as a long history of incarceration. During Kahlen's dependency, he has been incarcerated from November 1989 until the present. His scheduled release time is June 1992. Initially, Stephen W. did not maintain regular contact with *1420 Kahlen and his whereabouts were unknown to DSS. After incarceration, however, he wrote to Kahlen regularly, contacted Kahlen or her caretaker by phone, and visited with Kahlen on several occasions after the court ordered DSS to facilitate the visits. He has faithfully attended substance abuse counseling available in prison and arranged to have counseling with the prison psychologist in hopes of complying with the parenting/training requirement in the reunification plan. Parenting classes were not available to him in prison. He is, of course, unable to provide a home for Kahlen while incarcerated.
At the September 21, 1990, hearing, Kathleen D. stated for the first time that she was a member of the Miwok Tribe. The court ordered DSS to contact the Miwok Tribe pursuant to the Act. DSS requested that Kathleen D. provide DSS with her Indian roll number. She did not do so. DSS contacted the Bureau of Indian Affairs (Bureau) and was given the name of the three bands of the Miwok Tribe in the area. Social worker Kelli Opdyke testified she called the Shingle Springs Band and was told she needed a roll number in order to determine to what band the family belonged. Opdyke also talked to a representative of the Tuolumne Rancheria Band who confirmed a roll number was needed and said the Miwoks would not get involved unless they were requested to do so by the parent.
Both parents told Opdyke they had requested tribe intervention. Opdyke again talked to the council of the Tuolumne Band on December 10, 1990, and was told the tribe needed certain documents before it could determine if Kahlen was a member of the tribe. She was also told it would be at least 45 days before the tribe would meet to consider the application. At the December 11, 1990, hearing Kathleen D. requested a continuance in order to wait for the tribe's determination. The request was denied.
At oral argument, respondent conceded that Kahlen will likely be determined to be a member of the Miwok Tribe.

DISCUSSION

I. MOTIONS TO DISMISS[*]
.... .... .... .... .... .... .... .

*1421 II. WAS PROPER NOTICE GIVEN?
The pivotal issue raised is whether proper notice was given to the Miwok Tribe in accordance with the Act. All appellants/petitioners contend DSS failed to comply with the Act's notice provisions.
(1) In passing the Act, Congress identified two important, and sometimes independent, policies. The first, to protect the interests of the Indian child. The second, to promote the stability and security of Indian tribes and families. (In re Crystal K. (1990) 226 Cal. App.3d 655, 661 [276 Cal. Rptr. 619]; In re Junious M. (1983) 144 Cal. App.3d 786, 789 [193 Cal. Rptr. 40]; see also Matter of Appeal in Pima County, etc. (1981) 130 Ariz. 202 [635P.2d 187, 188].) The Act sets forth minimum federal standards, both substantive and procedural, for protecting these identified policies. (Matter of Appeal in Pima County, etc., supra, at p. 188.)
Section 1912(a) of the Act requires notice to the parents, Indian custodian, and tribe by registered mail return receipt requested of any child custody proceedings and of the rights afforded to each by the Act. (See § 1911(b), (c).)[2] Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies. Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by the Act would become meaningless. (Adoption of Lindsay C. (1991) 229 Cal. App.3d 404, 408 [280 Cal. Rptr. 194].)
Respondent concedes it did not technically comply with the notice provisions of the Act. However, DSS argues there was substantial compliance and that any failure to comply was the fault of Kathleen D. who should thus be estopped from asserting a claim of error or should be deemed to have waived the notice provision of the statute. These contentions fail.

A. Respondent Has Failed to Show the Giving of Notice of a Right to Intervene.

There are cases applying the Act which hold technical compliance is not required where there has been substantial compliance with the notice provisions of the Act. (See, e.g., Matter of Dependency and Neglect of A.L. (S.D. *1422 1989) 442 N.W.2d 233 [tribe given notice by certified mail]; Matter of S.Z. (S.D. 1982) 325 N.W.2d 53 [notice by certified mail]; and State ex rel. Juv. Dept. v. Tucker (1985) 76 Ore.App. 673 [710 P.2d 793, 798] [letter identifying child and stating right to intervene sufficient].) (2) However, the statute and all cases applying the Act unequivocally require actual notice to the tribe of both the proceedings and of the right to intervene. (§ 1912(a); Adoption of Lindsay C., supra, 229 Cal. App.3d 404, 408; In the Matter of Dependency and Neglect of N.A.H. and K.A.H. (S.D. 1988) 418 N.W.2d 310, 311; In Interest of H.D. (1986) 11 Kan. App.2d 531 [729 P.2d 1234, 1239].) There is no evidence in the record before this court that any of the Miwok Bands were notified of their right to intervene or provided information sufficient to do so prior to the December 11 hearing. Mere "awareness" of the proceedings has not been deemed sufficient under the Act. (See In Interest of H.D., supra, at p. 1237.)
The Indian status of the child need not be certain. Notice is required whenever the court knows or has reason to believe the child is an Indian child. (§ 1912(a); In re Junious M., supra, 144 Cal. App.3d 786, 788; In re M.C.P. (1989) 153 Vt. 275 [571 A.2d 627, 634].) The Act specifically provides for the contingency faced by the juvenile court below. Section 1912(a) provides when the identity or location of the tribe cannot be determined, notice is to be given to the Secretary of the Bureau (Secretary) in the manner prescribed by the statute. Under the statutory scheme, the burden of identifying and providing notice to the proper tribe in these circumstances shifts from the state court to the Secretary, who presumably has more resources and skill with which to ferret out the necessary information.
The Guidelines for State Courts; Indian Child Custody Proceedings (hereafter Guidelines) (44 Fed.Reg. 67584-67595 (Nov. 26, 1979)) promulgated under the statute for aid in interpreting its provisions identify in some detail the responsibilities inuring to the Secretary under the notice provisions of section 1912. First, in order to assist the Secretary in the task, the Guidelines provide notice to the Secretary should include the following information:[3]
(1) Name of Indian child, birthdate, birthplace,
(2) Indian child's tribal affiliation,
(3) Names of Indian child's parents or Indian custodians, including birthdate, birthplace, and mother's maiden name, and
*1423 (4) A copy of the petition, complaint or other document by which the proceeding was initiated. (25 C.F.R. § 23.11.)
Once the Secretary receives the statutory notice, the Secretary has 15 days in which to provide notice to the tribe (§ 1912(a)) or notify the court that it needs additional time to do so (25 C.F.R. § 23.11(e)). Notice to the tribe is to include:
"(1) A statement of the right of the ... Indian tribe to intervene in the proceedings.
".... .... .... .... .... .... ....
"(3) A statement of the right of the parents, the Indian custodians and the child's tribe to have, upon request, up to twenty additional days to prepare for the proceedings.
"(4) The location, mailing address and telephone number of the court.
"(5) A statement of the right of the parents, Indian custodians, and the Indian child's tribe to petition the court for transfer of the proceeding to the child's tribal court, and their right to refuse to permit the case to be transferred.
"(6) A statement of the potential legal consequences of the proceedings on the future custodial and parental rights of the parents or Indian custodians." (25 C.F.R. § 23.11(d).)
The Bureau must continue its search for the child's tribe even if its efforts cannot be completed before the proceedings begin. (25 C.F.R. § 23.11(e).)
DSS's inability to identify the correct band of the Miwok Tribe did not relieve its obligation to comply with the Act. DSS remained obligated to send notice to the Secretary in lieu of the tribe. It failed to do so. The telephone call made to the Bureau by Opdyke was insufficient under the statute to provide the requisite notice. Opdyke's testimony reveals only that she sought information on how to contact the tribe and what information the tribe would need to make a determinative finding regarding membership. The record does not establish the authority of the individual with whom Opdyke spoke, what, if any, information was given about Kahlen or the proceedings, or that the alternative notice provisions of the Act were being invoked.
Similarly, the telephone calls to the various bands of the Miwok Tribe were insufficient to provide notice of the right to intervene to Kahlen's tribe. *1424 This court cannot determine what or to whom information was given. Opdyke testified she contacted each band and was told if the parents did not request intervention, nothing could be done. We cannot determine whether the tribe erroneously believed it must have a request from the parents to intervene, or whether this was simply a prerequisite set by tribal policy. (The Tuolumne Band did notify Opdyke the morning of the December 11 hearing a request for intervention had been made.)
The tribe was not told it could request additional time or the consequences of its failure to intervene. Opdyke testified she was told by the Tuolumne Band that even if sufficient documentation were provided, the tribal council would not meet for another 30 days. However, it cannot be determined whether the tribal council, if it knew it must act within a more restrictive time frame, could or would have. Under these circumstances, we cannot say there was substantial compliance with the notice provisions of the Act.
Courts have consistently held failure to provide the required notice requires remand unless the tribe has participated in the proceedings or expressly indicated they have no interest in the proceedings. (Under such circumstances the error is often characterized as harmless.) (Adoption of Lindsay C., supra, 229 Cal. App.3d 404, 408-409; In the Matter of Dependency and Neglect of N.A.H. and K.A.H., supra, 418 N.W.2d 310, 311; In Interest of H.D., supra, 729 P.2d 1234, 1241; Matter of L.A.M. (Alaska 1986) 727 P.2d 1057, 1061; In re M.C.P., supra, 571 A.2d 627, 634.) Notice is mandatory, regardless of how late in the proceedings a child's possible Indian heritage is uncovered. (See In re Junious M., supra, 144 Cal. App.3d 786, 787-788 [issue raised on third day of Civ. Code, § 232 hearing five years after dependency established]; see also Mississippi Choctaw Indian Band v. Holyfield (1989) 490 U.S. 30, 64, fn. 12 [104 L.Ed.2d 29, 56, 109 S.Ct. 1597] (dissent of Stevens, J.) [the Act's jurisdictional provisions leaves state court judgments in noncompliance subject to attack].) The juvenile court's failure to secure compliance with the notice provisions of the Act is prejudicial error.

B. The Mother's Failure to Prove Membership in the Tribe Is Irrelevant.

(3) Notwithstanding the lack of notice, respondent argues noncompliance with the notice provisions was due to Kathleen D's failure to cooperate (provide a roll number and timely communicate her ancestry). It argues waiver and/or a form of estoppel forecloses appellants' challenge on this ground. The contentions must be rejected.
*1425 First, Kathleen D.'s failure to provide DSS with her roll number is irrelevant. Congress was not only concerned about the interests of individual members of a tribe but of the tribe itself. (Mississippi Choctaw Indian Band v. Holyfield, supra, 490 U.S. 30, 34-35, 49 [104 L.Ed.2d, 37-38, 47]; Adoption of Lindsay C., supra, 229 Cal. App.3d 404, 412.) The Act clearly protects the right of the tribe independent from any rights held by either parent. (See Mississippi Choctaw Indian Band v. Holyfield, supra, 490 U.S. at pp. 52-53 [104 L.Ed.2d at pp. 48-50], citing Matter of Adoption of Halloway (Utah 1986) 732 P.2d 962, 969-970; In re Baby Girl A. (1991) 230 Cal. App.3d 1611, 1620-1621 [282 Cal. Rptr. 105].) Indian tribes are independent communities possessing their own natural rights. (Matter of Appeal in Pima County, etc., supra, 635 P.2d 187, 188.) Indian children are a tribe's most valuable resources. (§ 1901(2), (3).) Moreover, parents are not necessarily knowledgeable about tribal government or membership and their interests may diverge from those of the tribe and those of each other. (See In re M.C.P., supra, 571 A.2d 627, 634.)
Nor can it be said Kathleen D., by her silence, waived her rights under the Act. There has been no showing Kathleen knew the consequences of her and Kahlen's Indian status and knowingly relinquished them. Moreover, the Guidelines provide that a juvenile court has an affirmative duty to inquire about a child's Indian status. (In re Junious M., supra, 144 Cal. App.3d 786, 793, citing Guidelines, 44 Fed.Reg. 67584 at p. 67589.)
Furthermore, a roll number is not crucial to a determination of the child's status. Although a roll number is a common means of establishing Indian status, it is not the only means. (In re Junious M., supra, 144 Cal. App.3d 786, 796.)
Lastly, the Act is based on a presumption that it is in the best interests of the Indian child not to be separated from the tribe. (Matter of Appeal in Pima County, etc., supra, 635 P.2d 187, 188-189, cited with approval in In re Crystal K., supra, 226 Cal. App.3d 655, 661.) Thus Kahlen has an independent right which must be protected irrespective of her mother's action or inaction.
(4) Respondent makes a strong argument that the child cannot be placed in suspension while her status as an Indian is determined. Respondent correctly notes the Act is intended, as is state law, to protect the best interests of the child, and thus timely disposition is paramount. (See In re Christina A. (1989) 213 Cal. App.3d 1073, 1080 [261 Cal. Rptr. 903].)
While we recognize the need for timely resolution of child custody proceedings, respondent cannot benefit from the delay it created. The *1426 Supreme Court in Mississippi Choctaw Indian Band v. Holyfield, supra, 490 U.S. 30, 53-54 [104 L.Ed.2d 29, 49-50], makes a similar observation. The juvenile court ordered DSS to comply with the notice requirements of the Act; it failed to do so. The Act is explicit as to what is required. Ascertaining the correct notice procedure when a child's status is uncertain is not difficult. A quick glance at the language of the statute and its attendant regulations provides the answer.
The notice requirements of the Act and the governing regulations encourage prompt exercise of the right to intervene. (§ 1912(a); see also Matter of Dependency and Neglect of A.L., supra, 442 N.W.2d 233, 236.) However, the delay in this instance is the direct result of DSS's failure to comply with the notice requirements of the Act. Section 1914 of the Act provides that any action placing an Indian child in foster care or terminating parental rights may be invalidated upon a showing that section 1911, 1912, or 1913 of the Act has been violated. Thus, despite the delay which necessarily will result, the matter must be remanded for reconsideration after adequate statutory notice is given.
The tribe is not required to intervene nor do we suggest or imply that the tribe should intervene or that, if it does, it will prevail on the positions it takes. (See Adoption of Lindsay C., supra, 229 Cal. App.3d 404, 416.) It must, however, be afforded an opportunity to do so through the requisite statutory notice.

III. REMAINING CONTENTIONS[*]
.... .... .... .... .... .... .... .

DISPOSITION
Let a peremptory writ of mandate issue directing the Stanislaus County Superior Court to vacate its orders filed on December 11, 1990, in action No. A-24224 setting a Welfare and Institutions Code section 366.26 hearing and to conduct a new permanency plan hearing in full compliance with the Act. The other orders resulting from the December 11 hearing are hereby reversed.
*1427 We also direct that within 10 days from the date the remittitur is filed herein, the superior court give written notice to the tribe or the Secretary of the right to intervene in the proceedings below.
Martin, Acting P.J., and Thaxter, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I and III.
[*] Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.
[1] All statutory references are to United States Code unless otherwise indicated.
[*] See footnote, ante, page 1414.
[2] Section 1911(a) is not applicable to this case because it is undisputed Kahlen was not domiciled on a reservation.
[3] The Guidelines are not binding on state courts. However, the administrative interpretation of a statute is entitled to great weight. (In re Junious M., supra, 144 Cal. App.3d 786, 792, fn. 7.)