IN RE INTEREST OF WALTER W., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
V. MARTINA A., APPELLANT.
719 N.W.2d 304

Filed July 11, 2006. No. A-05-1201.

Marian G. Heaney, of Legal Aid of Nebraska, for appellant.

Regina T. Makaitis, Special Prosecutor, for appellee.

INBODY, Chief Judge, and IRWIN and CARLSON, Judges.

INBODY, Chief Judge.

## INTRODUCTION

Martina A., the natural mother of Walter W., appeals the order of the Douglas County Separate Juvenile Court terminating her parental rights. For the reasons set forth herein, we vacate the lower court's order and remand for further proceedings.

## STATEMENT OF FACTS

Walter was born on January 2, 2003. On January 3, a petition was filed alleging that Walter came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2002) because Martina placed him in a situation dangerous to his life or limb or injurious to his health or morals in that she was unable to provide safe, stable, and independent housing for herself and her child and that her use of alcohol or controlled substances placed Walter at risk for harm. The following day, a motion for temporary custody was granted, and Walter was placed in the care and custody of the Department of Health and Human Services.

At a detention hearing on January 13, 2003, the juvenile court was informed that Martina was an enrolled member of the Yankton Sioux Tribe. The court ordered that the Yankton Sioux Tribe receive notice of all future hearings, and the detention hearing was continued to a later date.

On April 9, 2003, the State filed an amended supplemental petition seeking, among other things, to terminate Martina's parental rights to Walter pursuant to Neb. Rev. Stat. § 43-292(2) and (4) (Reissue 2004). On April 16, Martina filed a motion for a hearing to determine whether the Indian Child Welfare Act (ICWA) applied to this case. On May 2, the juvenile court found that Martina was an enrolled member of the Yankton Sioux Tribe; that Walter was eligible for enrollment; and, consequently, that the ICWA and its State counterpart were applicable to all further proceedings regarding Walter. On April 16, Martina had also filed a motion in limine requesting that the court prohibit the ad - mission of any evidence relating to the State's request for termination of her parental rights because the State failed to provide notice to the Yankton Sioux Tribe as required by the ICWA. The transcript does not reflect a ruling on this motion.

On July 2, 2003, the State filed a second amended supplemental petition seeking adjudication of Walter pursuant to § 43-247(3)(a), alleging that Walter lacked proper parental care by reason of the fault or habits of Martina in that Martina had been under the juvenile court's jurisdiction regarding her other five children for the past 2 years and had not demonstrated sufficient progress, stability, or compliance with the court's orders to be granted either unsupervised visitation or reunification with those five children; in that Walter tested positive for amphetamines at birth; and in that Martina's use of illegal drugs and lack of stability placed Walter at risk for harm.

On November 5, 2003, the Yankton Sioux Tribe filed a notice to intervene and a document stating that Walter was eligible for enrollment in the tribe.

On February 12, 2004, an adjudication hearing was held, and on April 23, the court found that Walter was a child within the meaning of § 43-247(3)(a).

At a review hearing held on November 16, 2004, the guardian ad litem offered into evidence, and the court received, a foster

care review board report dated October 19, 2004. This report, which relates to Walter, reveals that the director of ICWA affairs for the Yankton Sioux Tribe attended the meeting which gave rise to the report. The report stated, in part:

> [The director] indicated that the Yankton Sioux Tribe is not interested in taking jurisdiction of the case. The motion to intervene was filed because the tribe wants to be informed of the progress of the case. [The director] indicated that permanency for Walter is of utmost importance. He indicated that the tribe would not object to termination of [Martina's] rights, as [the tribe] would like Walter to be adopted. [The director] indicated that typically the tribe wants a child to be placed with relatives or with a non-relative Native American family; however if that is not possible any adoptive home is acceptable. [The director] indicated that he has not been able to find a relative who is willing to adopt Walter so he has ended his search for a relative placement. He spoke with four or five family members but none of them wanted to take Walter. Adoption by a non-relative Native American family is preferred; however, the priority is for permanency [for] Walter with any adoptive family.

On December 9, 2004, a second motion for termination of parental rights was filed, alleging § 43-292(2) and (7) as bases for termination. The motion further alleged that active efforts required under Neb. Rev. Stat. § 43-1505(4) (Reissue 2004) had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the family, but that said efforts were unsuccessful, and that returning Walter to Martina's custody would likely result in serious emotional or physical damage to him. Finally, the motion alleged that termination of parental rights was in Walter's best interests. The transcript does not contain evidence that the Yankton Sioux Tribe was notified, by certified or registered mail with return receipt requested, of the pending proceedings.

The hearing on the motion for termination of parental rights was held on June 3, 2005, and no representative of the tribe was in attendance. On September 2, the juvenile court filed an order terminating Martina's parental rights. Martina has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, Martina contends that the juvenile court erred in terminating her parental rights because (1) the State failed to notify an essential party to the proceedings, (2) there was insufficient evidence for the court to find that Walter would suffer serious physical or emotional damage if returned to her custody, (3) there was no evidence of " 'active efforts' " to prevent the breakup of the family between the date of disposition and the hearing on the motion to terminate parental rights, and (4) the evidence was insufficient to establish that termination of her parental rights was in Walter's best interests. Finally, Martina contends that current Court of Appeals case law precluding appeal on the issue of active efforts to prevent the breakup of a family until an order of termination of parental rights has been entered is in violation of state and federal law.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Dakota L. et al., ante* p. 559, 712 N.W.2d 583 (2006); *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005). In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. *In re Interest of Dakota L. et al., supra*; *In re Interest of Brittany C. et al., supra*. A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. *In re Interest of Dakota L. et al., supra*; *In re Interest of Brittany C. et al., supra*.

## ANALYSIS

*Does Natural Mother Have Standing to Raise Issue of State's Alleged Failure to Comply With Notice Requirements of § 43-1505(1)?*

First, we consider whether Martina has standing to raise the issue of the State's alleged failure to notify Walter's Indian tribe of the termination of parental rights proceedings as required by § 43-1505(1).

Section 43-1505(1) provides, in pertinent part:

In any involuntary proceeding in a state court, when the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by certified or registered mail with return receipt requested, of the pending proceedings and of their right of intervention.

See, also, 25 U.S.C. § 1912(a) (2000).

■ In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties. *In re Adoption of Baby Girl H.*, 262 Neb. 775, 635 N.W.2d 256 (2001); *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000); *In re Interest of Alycia P.*, 258 Neb. 258, 603 N.W.2d 7 (1999).

The parties have not cited to, nor has our independent research uncovered, any Nebraska cases on point. However, cases from other jurisdictions provide instruction. *In re H.D.*, 11 Kan. App. 2d 531, 729 P.2d 1234 (1986), involved a termination of parental rights where the rights of both the mother and the father to a minor child were terminated. The mother was "15/32 degree Indian blood of the Cherokee Tribe," and the father was not Indian. *Id.* at 532, 729 P.2d at 1236. Notice was not served upon either the tribe or the Secretary of the Interior as provided by the Kansas code for care of children, Kan. Stat. Ann. § 38-1501 et seq. (Supp. 1985). Both parents appealed to the Kansas Court of Appeals; the mother subsequently abandoned her appeal. The tribe was not involved in the appeal.

The father claimed that the ICWA applied to the lower court proceedings and that the district court's failure to follow the ICWA's provisions invalidated the termination order. The State of Kansas contended that because the father was not Indian, he had no standing to argue application of the ICWA, and that the mother's abandonment of her appeal rendered the case moot. The appellate court rejected the state's claim, finding that under the ICWA, " ' "parent" means any biological parent or parents of an Indian child . . . .' 25 U.S.C. § 1903(9) (1982)." *In re H.D.*, 11 Kan. App. 2d at 532, 729 P.2d at 1236. Further, although the

appellate court did not decide the question of the applicability of the ICWA, the district court's failure to direct that proper notice be served upon the tribe or Secretary of the Interior rendered the order terminating parental rights invalid. Thus, the appellate court reversed the decision of the district court and remanded the cause for further proceedings. See, also, *In re J.J.G.*, 32 Kan. App. 2d 448, 83 P.3d 1264 (2004) (non-Indian father has standing to seek application of ICWA); *K.N. v. State*, 856 P.2d 468 (Alaska 1993) (ICWA applies even where state is seeking to terminate parental rights of non-Indian parent).

Other jurisdictions have also allowed parents to raise issues when the tribe is not involved in the appeal. In *People ex rel. DSS in Interest of C.H.*, 510 N.W.2d 119 (S.D. 1993), the natural mother appealed the termination of her parental rights. The tribe was not involved in the appeal. The natural mother claimed that she was half Choctaw Indian, and the original petition filed by the South Dakota Department of Social Services recognized this claim. Despite the fact that the State of South Dakota had reason to know that an Indian child may have been involved in the case, no notice was given to the Secretary of the Interior and inadequate notice was given to the relevant Choctaw tribe. The South Dakota Supreme Court determined that where there has been inadequate notice to determine whether the ICWA is applicable, the appropriate procedure is to remand the cause to the trial court with instructions to provide proper notice to the tribe. If the trial court subsequently determines that the ICWA is applicable, then the order of termination is to be reversed and further proceedings shall be held in accordance with the provisions of the ICWA. However, if the trial court determines that the ICWA is not applicable, then the order of termination shall be affirmed. See, also, *In re J.T.*, 166 Vt. 173, 693 A.2d 283 (1997) (where court erred when it failed to provide notice pursuant to ICWA even though it had reason to believe children of Indian ancestry were involved in proceedings, requiring remand); *In re M.C.P.*, 153 Vt. 275, 571 A.2d 627 (1989) (Vermont court remanded for adequate notice with instruction that if, on remand, it was determined that ICWA did not apply, original disposition order would stand); *In re Colnar*, 52 Wash. App. 37, 757 P.2d 534 (1988) (appellate court remanded where state failed to give

proper notice pursuant to ICWA, but when trial court subsequently determined ICWA was not applicable, appeals court affirmed trial court's termination of parental rights).

Likewise, in *In re R.E.K.F.*, 698 N.W.2d 147 (Iowa 2005), a father appealed the termination of his parental rights, contending that the State of Iowa did not comply with the tribal notice provisions of the Iowa ICWA. The Iowa Supreme Court determined that because the State of Iowa notified the wrong Indian tribe, further proceedings were required. It held that upon remand, once the proper notice was provided to the correct tribe, if there was a determination that the child was not an Indian child, then the termination would be affirmed. If the child was determined to be an Indian child and the tribe wanted to intervene, the termination of parental rights must be reversed.

We note that the State has cited the case of *R.B. v. State Dept. of Human Resources*, 669 So. 2d 187 (Ala. Civ. App. 1995), wherein parents appealed from a judgment denying their petition to terminate their parental rights to two of their adopted children. On appeal, the parents sought to raise the issue of the trial court's denial of an Indian tribe's motions to intervene and for transfer of jurisdiction pursuant to the ICWA. The appellate court held that the parents could not raise the issue because the tribe had not appealed the trial court's judgment. This case is distinguishable from the instant case because unlike the issue of failure to provide notice to the tribe, in the circumstance where an appeal involves the denial of a tribe's motions to intervene and transfer jurisdiction, the tribe must have been apprised of the pending proceedings in order to file those motions in the first place.

Limiting standing to raise the failure to notify a tribe in many instances will not serve the stated purposes and goals of the ICWA.

> "The ICWA was enacted to promote the stability and security of Indian tribes and families through the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.
>
> "When Congress enacted the ICWA, it had two main goals: (1) protecting the best interests of the Indian children

and (2) promoting the stability and security of Indian tribes and families. See 25 U.S.C. § 1902. The act is based on the assumption that protection of the Indian child's relationship to the tribe is in the child's best interests. *Mississippi Choctaw Indian Band v. Holyfield*, 490 U.S. 30, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989)."

*In re Interest of Enrique P. et al., ante* p. 453, 462-63, 709 N.W.2d 676, 684, (2006) (quoting *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992)).

Because in many, if not most, instances, tribes depend upon parents to notify the State of known or potential Indian ancestry, and because Indian tribes cannot intervene in cases of which they have received no notification, logic dictates that parents may often be best situated to raise claims of inadequate notice to tribes. Therefore, we believe the stated purposes of the ICWA are best served by allowing parents to raise, in their direct appeal from a termination of parental rights, the issue of the State's failure to notify the child's Indian tribe of the termination of parental rights proceedings as required by § 43-1505(1).

*Did Juvenile Court Err in Terminating Natural Mother's Parental Rights Because State Failed to Notify Essential Party?*

Martina contends that the juvenile court erred in terminating her parental rights because the State failed to notify an essential party to the proceedings.

"The ICWA was enacted to promote the stability and security of Indian tribes and families through the establishment of minimum federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.

"When Congress enacted the ICWA, it had two main goals: (1) protecting the best interests of the Indian children and (2) promoting the stability and security of Indian tribes and families. See 25 U.S.C. § 1902. . . ."

*In re Interest of Enrique P. et al., ante* at 462-63, 709 N.W.2d at 684 (quoting *In re Interest of C.W. et al., supra*).

Section 43-1505(1) provides:

*In any involuntary proceeding in a state court, when the court knows or has reason to know that an Indian child is*

*involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by certified or registered mail with return receipt requested, of the pending proceedings and of their right of intervention.* If the identity or location of the parent or Indian custodian and the tribe cannot be determined, such notice shall be given to the secretary in like manner, who may provide the requisite notice to the parent or Indian custodian and the tribe. *No foster care placement or termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the secretary.* The parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding.

(Emphasis supplied.) See, also, § 1912(a).

 In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003); *In re Interest of Anthony V.*, 12 Neb. App. 567, 680 N.W.2d 221 (2004). In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

The State concedes that the transcript does not contain evidence that the Yankton Sioux Tribe was notified by certified or registered mail with return receipt requested of the pending proceedings as required by § 43-1505(1). Although the State points out that the tribe's representative had stated at a foster care review board meeting that the tribe would not contest termination of Martina's rights, the representative also stated that the tribe intervened because it wanted to be informed of the progress of the case, and the tribe did not waive notice of future proceedings in this case. Since the plain language of the statute provides that "[n]o . . . termination of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent

or Indian custodian and the tribe or the secretary," *id.*, we determine that the termination hearing conducted in this case was invalid, and thus, the order of termination must be vacated. We therefore remand this cause to the juvenile court for further proceedings to be conducted following provision of proper notice to the Yankton Sioux Tribe.

■ Having made this determination, we need not consider Martina's assigned errors regarding whether there was sufficient evidence for the court to find that Walter would suffer serious physical or emotional damage if returned to her custody, whether there was evidence of " 'active efforts' " to prevent the breakup of the family between the date of disposition and the hearing on the motion to terminate parental rights, and whether the evidence was sufficient to establish that termination of her parental rights was in Walter's best interests. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994).

*Is Current Case Law Precluding Appeal on Issue of Active Efforts Until Order of Termination of Parental Rights Has Been Entered Violative of State and Federal Law?*

Finally, Martina contends that current case law precluding appeal on the issue of active efforts to prevent the breakup of a family until an order of termination of parental rights has been entered is in violation of state and federal law. She claims that a party should be allowed to appeal on the issue of active efforts following an order of adjudication.

■ Clearly, an adjudication is a final, appealable order, and case law provides that no collateral attack on an adjudication order is permitted except for a lack of jurisdiction or a denial of due process. *In re Interest of Preston P.*, 13 Neb. App. 567, 698 N.W.2d 199 (2005). See *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). However, Martina did not appeal the adjudication order. Therefore, her assignment of error is not properly before this court and will not be considered.

## CONCLUSION

Having found that the State did not comply with the plain language of § 43-1505(1), which provides that "[n]o . . . termination

of parental rights proceedings shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe or the secretary," we conclude that the termination hearing conducted in this case was invalid, and thus, the order of termination is vacated and the cause is remanded to the juvenile court for further proceedings to be conducted following provision of proper notice to the Yankton Sioux Tribe.

ORDER VACATED, AND CAUSE REMANDED
FOR FURTHER PROCEEDINGS.