Filed 6/5/14  In re L.C. CA3

**NOT TO BE PUBLISHED**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| In re L.C. et al., Persons Coming Under the Juvenile Court Law. | C075200 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. Nos. JD231681, JD231682) |
| Plaintiff and Respondent, | |
| v. | |
| ANDREA B., | |
| Defendant and Appellant. | |

Andrea B., mother of the two minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends the Sacramento County Department of Health and Human Services (the Department)

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.) We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The minors, one-year-old L.C. and two-year-old K.C, were removed from parental custody in June 2011 due to petitions alleging they were at risk of harm from serious domestic violence in the home that had not been alleviated by voluntary services. The detention report stated that father claimed Cherokee heritage through his paternal relatives and mother claimed no Indian heritage. However, at the detention hearing both parents filed "Parental Notification of Indian Status" forms in which father again claimed Cherokee heritage and mother now claimed "Blackfoot" heritage.[2] At the detention hearing the court confirmed that mother claimed Indian ancestry in the Blackfoot tribe and directed that both parents be provided with a questionnaire that would provide the Department with relevant noticing information. The court ordered the Department to give notice to all federally recognized tribes.

The paralegal assigned to provide the ICWA notice and report to the court on the results filed a declaration in July 2011. The declaration stated that the paralegal called father on July 1, 2011, and received limited information from father, which was incorporated in the notice sent to the Cherokee tribes. The paralegal had not received any completed questionnaire or family tree diagram. The declaration does not state that the paralegal made or attempted to make contact with mother or inquire about her claimed Blackfoot heritage. Attached to the paralegal's declaration was a copy of the "Notice of Child Custody Proceeding for Indian Child" that the paralegal sent to the Cherokee tribes.

---

[2] The federally recognized tribe is the Blackfeet Tribe of Montana. (79 Fed.Reg. 4749 (Jan. 29, 2014) Notices.) However, the Blackfeet Tribe is frequently confused with the "Blackfoot" tribe (which is a related tribe in Canada) and both terms are used, sometimes interchangeably.

Information about mother and her relatives was limited to mother's name and address and the statement "No Indian Ancestry."

The jurisdiction/disposition report stated that the ICWA notice was sent to the Cherokee tribes based on father's claim of Indian heritage. The report did not contain any indication that anyone made any inquiry of mother about her claim of Indian heritage. At the jurisdictional/dispositional hearing, the court sustained the petitions and ordered reunification services for the parents.

The court held an ICWA compliance hearing in September 2011. Both parents were present. At the hearing, the court asked each counsel to go over the notice form with each parent "to make certain that the information that was provided to the tribes is accurate and does not need to be amended." Father's counsel stated that the information was correct and that father had no additional information. Mother's attorney told the court that "The information is correct for the mother." The court subsequently found that the ICWA did not apply to the case.

The parents failed to reunify with the minors. In September 2013, the court terminated parental rights and selected a permanent plan of adoption.

## DISCUSSION

Mother contends the Department failed to comply with the ICWA by failing to send notice of the proceedings to the tribe she identified.[3]

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.)

_____

[3] On appeal mother concedes that the appropriate federally recognized tribe is the Blackfeet Tribe.

The juvenile court and the Department have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a).) After the initial inquiry, if there is reason to know an Indian child is or may be involved, the Department is required to make further inquiry by interviewing the minor's parents and extended family, if known, concerning the child's membership status or eligibility. (§ 224.3, subd. (c); Cal. Rules of Court, rule 5.481(a)(4).) Where, after inquiry, the court "knows or has reason to know that an Indian child is involved," notice of the pending proceeding and the right to intervene must be sent to the tribe or the Bureau of Indian Affairs (BIA) if the tribal affiliation is not known. (25 U.S.C. § 1912(a); § 224.2; Cal. Rules of Court, rule 5.481(b).) Failure to comply with the inquiry and notice provisions and determine whether the ICWA applies is prejudicial error. (*In re Desiree F*. (2000) 83 Cal.App.4th 460, 472; *In re Kahlen W*. (1991) 233 Cal.App.3d 1414, 1424.)

Here, mother stated that she may have Blackfoot ancestry. In light of the well-known confusion between the Blackfoot and Blackfeet tribes, rather than simply concluding mother had identified a tribe that is not federally recognized, as respondent suggests, the Department had a duty of inquiry to ascertain not only whether mother was confused about the name of the tribe, but also any information that might bear on the minors' membership or eligibility. The record is clear that, after initial contact prior to the dispositional hearing, the Department made no inquiry of mother whatsoever regarding her claim of Indian heritage. Further, despite mother's claim of Blackfoot heritage, the notice form sent to the Cherokee tribes stated mother had "No Indian Ancestry." Thus the obligatory inquiry did not occur and the Department misrepresented mother's claimed status. Normally, a limited reversal for further inquiry would be necessary.

4

However, following the noticing of the Cherokee tribes, the court held an ICWA compliance hearing. At the hearing, the court specifically directed counsel for each parent to review the notice form for any errors. Mother was present with counsel at the hearing. Counsel represented the information in the notice form as to mother was correct. The reasonable inference is that mother withdrew her claim of Indian heritage and reasserted the position she had initially claimed prior to the dispositional hearing. Mother's withdrawal of her claim of Indian heritage relieved the Department of any duty to inquire or give notice to any tribe or to the BIA pursuant to the ICWA.

Given our resolution of the issue, we need not address the several points raised by respondent in the reply brief.

## DISPOSITION

The orders of the juvenile court are affirmed.


                                                    BUTZ            , J.



We concur:



        NICHOLSON        , Acting P. J.



        MURRAY          , J.