NO. 4-07-0785          Filed 2/15/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re: T.A., Ta.A., and J.A., | ) | Appeal from |
| Minors, | ) | Circuit Court of |
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Champaign County |
| Petitioner-Appellee, | ) | No. 06JA20 |
| v. | ) | |
| MICHAEL AMOS, | ) | Honorable |
| Respondent-Appellant. | ) | Holly F. Clemons, |
| | ) | Judge Presiding. |

JUSTICE MYERSCOUGH delivered the opinion of the court:

In August 2007, the trial court entered a dispositional order finding J.A., born January 26, 2007, neglected. The court granted custody and guardianship of J.A. to the guardianship administrator of the Illinois Department of Children and Family Services (DCFS). J.A.'s father, respondent Michael Amos, appeals, arguing the matter should be remanded for a determination of whether J.A. is an Indian child under the Indian Child Welfare Act of 1978 (Act) (25 U.S.C. §§1901 through 1923 (2000)). We disagree and affirm.

I. BACKGROUND

In March 2006, prior to J.A.'s birth, the State filed a petition alleging that J.A.'s siblings, T.A., born July 16, 2003, and Ta.A., born August 2, 2005, were neglected minors because their environment was injurious to their welfare while under the care of their mother, Theresa Jones, and their father, respondent (705 ILCS 405/2-3(1)(b) (West 2006)). The children's mother,

Theresa, is not a party to this appeal.

In August 2006, the trial court found T.A. and Ta.A. neglected. Thereafter, DCFS filed a dispositional report. According to the report, Theresa reported she was of African-American and Native American descent. In September 2006, the court entered a dispositional order adjudicating T.A. and Ta.A. neglected, making T.A. and Ta.A. wards of the court, and awarding custody and guardianship to DCFS. However, the record indicates that by January 2007, custody of T.A. and Ta.A. had been returned to Theresa but guardianship remained with DCFS.

On January 26, 2007, J.A. was born. In March 2007, the State filed a supplemental petition for adjudication of wardship. The petition alleged that J.A. was a neglected minor because (1) Theresa did not provide the medical care recognized under state law as being necessary for the child's well-being (705 ILCS 405/2-3(1)(a))(West 2006)) (count I); and (2) an injurious environment exposed J.A. to the risk of physical harm when J.A. lived with Theresa (705 ILCS 405/2-3(1)(b))(West 2006)) (count II). Apparently, the allegations were limited to Theresa because respondent was incarcerated. The petition also contained allegations regarding T.A. and Ta.A., but those allegations were later stricken because T.A. and Ta.A. had previously been adjudicated neglected and made wards of the court. In March 2007, the trial court entered a temporary custody order awarding temporary custody of J.A. to the guardianship administrator of DCFS.

In May 2007, the trial court held the adjudicatory hearing. Theresa stipulated to count I (failure to provide necessary medical care). Respondent waived the adjudicatory hearing. In June 2007, the court entered a written adjudicatory order finding J.A. neglected based on count I and dismissing count II (injurious environment exposed J.A. to the risk of physical harm).

On June 20, 2007, DCFS filed a dispositional report prepared by Catholic Charities. The report noted that Theresa stated she was of African-American and Native-American descent. The report also provided as follows:

> "This worker has contacted the \*\*\* Act \*\*\*
> Liaison at DCFS with this information so they
> can determine if the [Act's] laws would apply
> in [Theresa's] case."

The report indicated that further information would be provided when it became available. Additionally, the report noted that respondent had been paroled from prison in May 2007.

The dispositional hearing was scheduled for June 21, 2007. The record does not contain a transcript of this hearing. According to the June 21, 2007, docket entry, the trial court continued the matter until July 30, 2007.

On July 26, 2007, DCFS filed an addendum to the dispositional report prepared by Catholic Charities. The addendum provided that the American Indian Child Welfare Advocacy Program was working with Catholic Charities "to research the

eligibility of T.A., Ta.A., and J.A. as being with one of the three Cherokee Nations within the United States." The report noted that the process was lengthy, and the date the process would be completed was unknown. The report indicated that Theresa had stated her understanding that none of her family members were registered with any tribes.

On July 30, 2007, the trial court held the dispositional hearing. The following discussion ensued:

"THE COURT: *** Counsel, one of the reasons we had set this over was developments with respect to [the Act]. Apparently we don't have any further information at this juncture. Ms. Geller, as to how you wish to proceed.

MS. GELLER [(assistant State's Attorney)]: Your honor, in light of the fact that there is no--nobody's been able to identify a tribe or nobody is--seems to know whether or not they are, in fact, registered with a tribe, I don't think [the Act] is going to apply in this situation and the State would be ready to proceed.

THE COURT: Mr. Fitton.

MR. FITTON [(Theresa's attorney)]: Your honor, at this point, I don't have anymore to add than what was in the most recent report

- 4 -

received July 26th.  Just that the Catholic Charities is researching eligibility to three different Cherokee nations.  So I don't have anything more to add than that.

THE COURT:  All right.  Mr. Appleman.

MR. APPLEMAN [(respondent's attorney)]: Judge, I think at this point we should proceed--yeah, I'll leave it at that.

THE COURT: Ms. Geller.

MS. GELLER: And your Honor, as I understand it, if each of the [r]espondent parents were to, I believe under [the Act], the only reason in which a tribe would get involved is if the tribe wanted to get involved, and/or if the parents wanted the tribe to be involved.  I think the parents might be able to waive the involvement of the tribe, and therefore, we could continue to the dispositional hearing without that concern.

THE COURT: I think if the tribe wants to intervene, they can intervene, if a tribe is identified.

MS. GELLER: I believe the tribe has the right to intervene; however, I was under the impression from the last time we researched

this issue, that if the [r]espondent--if one of the [r]espondent parents objected and wanted this matter to remain in this circuit court, that it [sic] would have to do so. I'm not saying that with significant authority, that's just the thing that I recall, we might have discussed the last time this issue arose.

THE COURT: Ms. Pennacchi, as to how would you wish to proceed.

MS. PENNACCHI: We can proceed today.

THE COURT: At this juncture, if nobody has any objection, I'll proceed today. And if necessary, at some future point, the [c]ourt will vacate its orders if it becomes necessary."

At the conclusion of the hearing, the trial court found J.A. neglected and made her a ward of the court. The court placed custody and guardianship of J.A. with the guardianship administrator of DCFS. The court provided that a written dispositional order would follow. On August 23, 2007, the trial court entered the written dispositional order.

This appeal followed.

## II. ANALYSIS

Respondent argues that the trial court should have made a determination of whether J.A. was an Indian child. Respondent

- 6 -

also argues that because the court knew or should have known that J.A. was an Indian child, notice should have been given in accordance with the Act. Respondent asks this court to invalidate the court's order and remand for a determination of whether J.A. is an Indian child.

## A. Standard of Review

Whether the trial court was required, under the facts of this case, to make a determination on the record as to the applicability of the Act or to give notice under the Act involves issues of statutory interpretation and, as such, this court reviews the issues de novo. See, e.g., In re C.N., 196 Ill. 2d 181, 203, 752 N.E.2d 1030, 1043 (2001) (involving whether the trial court was required to make a determination of whether the minor was an Indian child); In re IEM, 233 Mich. App. 438, 443, 592 N.W.2d 751, 755 (1999) (involving whether the notice requirements were satisfied).

## B. The Purpose of the Act

"The Act was adopted to respond to a crisis occurring in Indian tribes in which large numbers of Indian children were being separated from their families and placed in non-Indian homes." In re Stiarwalt, 190 Ill. App. 3d 547, 550, 546 N.E.2d 44, 47 (1989), citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 32, 104 L. Ed. 2d 29, 36, 109 S. Ct. 1597, 1599-1600 (1989). This deprived the children of their Indian heritage and threatened "the tribes' ability to function as an autonomous community." Stiarwalt, 190 Ill. App. 3d at 551,

546 N.E.2d at 47, citing <u>Holyfield</u>, 490 U.S. at 35-36, 104 L. Ed. 2d at 38, 109 S. Ct. at 1061.

The Act governs child-custody proceedings involving Indian children, including foster-care placements, terminations of parental rights, and adoptive placements; and it provides minimum federal standards for the removal of Indian children from their families.  See 25 U.S.C. §§1902, 1903 (2000).  Under the Act, tribal courts are granted exclusive jurisdiction over a child-custody proceeding involving an Indian child who resides or is domiciled within the tribe's reservation or who is a ward of a tribal court.  25 U.S.C. §1911(a) (2000).  State courts and tribal courts have concurrent jurisdiction over proceedings involving an Indian child who is not domiciled or residing within the reservation of the Indian child's tribe.  25 U.S.C. §1911(b) (2000).  In the case of concurrent jurisdiction, the state court must transfer the proceedings to the tribal court upon the petition of either parent, an Indian custodian, or the Indian child's tribe absent good cause to the contrary, objection by either parent, or declination of jurisdiction by the tribal court.  25 U.S.C. §1911(b) (2000).

If the child is an Indian child, section 1912(e) of the Act provides that no foster-care placement may be ordered absent a determination, supported by both conclusive evidence and qualified expert testimony, that the continued custody of the child by the parent or Indian custodian is likely to result in serious physical or emotional damage to the Indian child.  25

U.S.C. §§1912(e), (f) (2000). Additionally, an Indian child shall be placed in the least-restrictive setting, and preference of placement shall be with the following:

"(i) a member of the Indian child's extended family;

(ii) a foster home licensed, approved, or specified by the Indian child's tribe;

(iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or

(iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs."

25 U.S.C. §1915(b) (2000).

Finally, the Act requires that the party seeking a foster-care placement or termination of parental rights satisfy the trial court (1) that active efforts had been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family but (2) that those efforts were unsuccessful. 25 U.S.C. §1912(d) (2000).

### C. Trial Court Was Not Required To Make a Determination on the Record Whether J.A. Was an Indian Child

Respondent argues the trial court erred by failing to make a determination on the record whether J.A. was an Indian child. The State argues respondent forfeited this argument by

failing to raise it in the trial court.

Whether any provisions of the Act can be forfeited is unclear. Clearly, the notice provisions of the Act are intended to serve the interests of the Indian tribes and cannot be forfeited by a parent. See In re J.O., 170 P.3d 840, 842 (Colo. App. 2007) (providing that the notice requirements cannot be forfeited, and the issue may be raised for the first time on appeal). However, a parent may be able to affirmatively waive application of the procedural requirements of the Act, such as the expert-testimony requirement, so long as the waiver is knowingly and voluntarily made. See In re Jennifer A., 103 Cal. App. 4th 692, 708, 127 Cal. Rptr. 2d 54, 65 (2002) (citing California Court Rule 1439(i) and finding that a parent could waive application of the Act's procedural requirements so long as the waiver is knowing and voluntary); see also, e.g., In re Riva M., 235 Cal. App. 3d 403, 412, 286 Cal. Rptr. 592, 597 (1991) (finding the father forfeited any error in the use of the clear-and-convincing standard and the failure to require expert testimony by not objecting). The State does not cite, nor does this court find, any case addressing whether a party can forfeit the trial court's obligation to determine whether a child is an Indian child. But see C.N., 196 Ill. 2d at 205, 752 N.E.2d at 1044 (addressing whether the trial court erred by failing to determine whether the child was an Indian child even though the respondent father did not raise the applicability of the Act in the trial court and concluding that the court did not err).

Regardless of forfeiture, however, the trial court in this case was not required to make a determination on the record whether J.A. was an Indian child. The Act defines an "Indian child" as follows:

> "[A]ny unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. §1903(4) (2000).

While the definition speaks in terms of the child being a "member" of a tribe or the biological child of a "member" of a tribe, the absence of evidence of the child's or child's parent's enrollment alone may not be determinative of whether the child or parent is a member of a tribe. In re the Termination of Parental Rights to Arianna R.G., 2003 WI 11 ¶17, 259 Wis. 2d 563, 575-76, 657 N.W.2d 363, 369 (2003) (noting that when the potential tribe is unidentified, the criteria for membership may be unknown, and therefore lack of enrollment in the tribe does not necessarily preclude a person from being a member of a tribe). Tribes use a wide range of membership criteria, and some tribes may automatically include a person as a member if the person is a descendant of a tribe member. Arianna R.G., 2003 WI 11 ¶17 & n.13, 259 Wis. 2d at 575 & n.13, 657 N.W.2d at 369 & n.13. The party asserting the applicability of the Act has the burden of producing sufficient evidence for the court to determine if the

- 11 -

child is an Indian child.  C.N., 196 Ill. 2d at 205, N.E.2d at 1044.

The Bureau of Indian Affairs has promulgated nonbinding guidelines to assist the state courts with applying the Act. See Guidelines for State Courts: Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (1979) (hereinafter Guidelines) (noting that the regulations were not intended to have binding legislative effect).  These Guidelines provide, in relevant part, as follows:

> "When a state court has reason to believe a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe."  Guidelines, 44 Fed. Reg. at 67,586, par. B.1(a).

The Guidelines also provide circumstances for when the state court should have reason to believe a child is an Indian child. These circumstances include when (1) a party, tribe, or agency informs the court that the child is an Indian child; (2) a state-licensed agency involved in child-protection services discovers information suggesting the child is an Indian child; (3) the child gives the court reason to believe the child is an Indian child; (4) the residence of the child, biological parent, or Indian custodian is known to be a predominantly Indian community; and (5) an officer of the court involved in the proceeding has knowledge the child may be an Indian child.  See Guidelines, 44

- 12 -

Fed. Reg. at 67,586, par. B.1(i) through (v).

Using, in part, those guidelines, the Illinois Supreme Court, in C.N., held that the respondent father's unsubstantiated statements regarding his alleged Indian heritage were insufficient to implicate the Act. C.N., 196 Ill. 2d at 206, 752 N.E.2d at 1044. In C.N., the allegations of Indian heritage in the record included (1) the DCFS caseworker's testimony that the respondent father had told her he was "part of a Native American tribe," asked her to pursue whether his family was registered, and that she did so; and (2) a psychological assessment of respondent father noted that the respondent father identified himself as the son of a "'full-blooded Blackfoot Indian'"; the report also noted that while respondent claimed to be Native American, the caseworker provided information indicating, the claim was not true. C.N., 196 Ill. 2d at 205, 752 N.E.2d at 1044. The supreme court held that the evidence was insufficient to implicate the Act, and the trial court did not err by failing to make a determination on the record regarding the applicability of the Act. C.N., 196 Ill. 2d at 206, 752 N.E.2d at 1044.

Similarly here, the record contains only the two DCFS reports and addendum indicating that Theresa stated "she is of African[-]American and Native American descent." The addendum also stated, "[Theresa] has stated that it is her understanding that none of her family members are registered with any tribes." Such statements were insufficient to require the trial court to make a determination on the record whether J.A. was an Indian

- 13 -

child.  No evidence or testimony suggests that either Theresa or J.A. was even eligible for membership in a tribe.  See, e.g., In re H.D., 343 Ill. App. 3d 483, 489, 797 N.E.2d 1112, 1117-18 (2003) (finding that where neither parent presented evidence to support a finding that the child was an Indian child, the Act did not apply, and the trial court erred by assuming the Act applied without establishing that the child was an Indian child); In re M.S., 302 Ill. App. 3d 998, 1001, 706 N.E.2d 524, 527 (1999) (finding the trial court properly exercised jurisdiction in termination of respondent mother's parental rights as to two children; trial court concluded respondent's alleged Native American heritage was not an issue; the mother had interposed the bare allegation but failed to provide any evidence that either she or her children were eligible for membership in any particular tribe; respondent's caseworker contacted several Cherokee tribes but obtained nothing to substantiate her claim); In re M.N.W., 577 N.W.2d 874, 877 (Iowa App. 1998)) (finding an "unsubstantiated" statement made by the caseworker that the child's mother indicated that the child's father was part Native American was insufficient to require the trial court to determine whether the child was Indian).

    D. The State Was Not Required to Send Notice to the Tribe
            or Secretary of the Interior

Respondent also argues that section 1912(a) of the Act was violated because notice of the pending action was not sent to the Cherokee Nations.  As previously noted, the notice requirements cannot be forfeited by the parents' failure to raise

- 14 -

the issue in the trial court.  See J.O., 170 P.3d at 842.

The Act provides that if the trial court "knows or has reason to know" that an Indian child is involved in an involuntary custody proceeding, the party seeking the foster-care placement of the Indian child must notify the parent or Indian custodian and the Indian child's tribe by registered mail of the pending proceeding and their right to intervene.  25 U.S.C. §1912(a) (2000).  If the identity of the child's tribe cannot be determined, notice shall be given to the Secretary of the Interior.  25 U.S.C. §§1912(a), 1903 (2000).  Any parent or Indian custodian from whom custody an Indian child was removed or the Indian child's tribe may petition any court of competent jurisdiction to invalidate the custody removal upon a showing that the notice provisions of the Act were violated.  25 U.S.C. §1914 (2000); see also J.O., 170 P.3d at 842 (holding that a non-Indian biological parent has standing to argue that the notice requirements of the Act were not followed).

The Indian status of a child need not be certain before the Act's notice provisions are triggered. Notice is required whenever the trial court knows or has reason to know the child is an Indian child.  See 25 U.S.C. §1912(a) (2000); In re Kahlen W., 233 Cal. App. 3d 1414, 1420, 285 Cal. Rptr. 507, 511-12 (1991) (wherein the respondent mother asserted she was a member of an Indian tribe and asked for additional time to await the tribe's determination).  Specifically, Indian tribes, functioning as autonomous communities, have a separate interest in the potential

- 15 -

Indian child welfare proceedings from the parties involved.  In re M.C.P., 153 Vt. 275, 285, 571 A.2d 627, 632-33 (1989) (finding the trial court erred by not providing notice to the Mohawk Indian Tribe where the minor's father's membership in the tribe gave the trial court reason to know the minor may be an Indian child).

This court must determine whether the trial court had a "reason to know" J.A. was an Indian child, thereby triggering the notice requirements of the Act.  No Illinois case has decided what constitutes a "reason to know" that a child is an Indian child.  In C.N., the supreme court specifically noted that the respondent father did not argue that the State violated the notice provisions.  C.N., 196 Ill. 2d at 207, 752 N.E.2d at 1045.

Looking at other jurisdictions, we note some courts require only a mere suspicion that a child may be an Indian child before the notice requirement is triggered.  See In re Antoinette S., 104 Cal. App. 4th 1401, 1407-08, 129 Cal. Rptr. 2d 15, 20-21 (2002) (wherein the father's bare assertion that he believed his deceased grandparents might have Indian ancestry was sufficient to trigger the notice requirements); In re T.M., 245 Mich. App. 181, 187, 628 N.W.2d 570, 573 (2001) (finding the notice provisions triggered where the respondent testified that although she was not a member of a tribe, she was of Native American heritage and believed she had Cherokee ancestry).  This court agrees, however, with those cases holding that the mere mention of Indian heritage does not give a trial court reason to know

- 16 -

that the child is an Indian child.  See <u>Arianna R.G.</u>, 2003 WI 11 ¶¶29 through 36, 259 Wis. 2d at 580-83, 657 N.W.2d at 371-73 (finding the notice provisions were not triggered where the father did not assert his children were members of or eligible for membership in a federally recognized tribe or the biological children of a tribe member); <u>In re A.L.</u>, 2001 ND 59, 63, 623 N.W.2d 418, 422 (2001) (finding that the respondent mother's counsel raising unsupported and vague assertions during a termination hearing about the child's potential eligibility for enrollment in a specific tribe was insufficient to invoke the notice requirement of the Act); <u>In re Johanson</u>, 156 Mich. App. 608, 613, 402 N.W.2d 13, 15-16 (1986) (where respondent mother made several references to the Saginaw Tribe of Chippewa Indians but stated that she was not a member of the tribe, the court held that it did not know or have reason to know that the child was an Indian child); <u>In re Guardianship of J.O.</u>, 327 N.J. Super. 304, 316, 743 A.2d 341, 347 (2000) (finding that vague and casual references to Indian ancestry made by respondent mother's counsel were insufficient to trigger the Act's notice requirement). Membership in a tribe is not easily determined because membership depends upon each tribe's particular rules.  However, where the record contains no suggestion that the child is an Indian child, that is, a member of a tribe or the biological child of a member of a tribe, the notice requirements are not triggered.

In this case, the only "evidence" presented consisted of Theresa's statements to the caseworker that she was of Native

American descent and that, to her knowledge, none of her family members were registered with any tribes. These bare assertions of Indian heritage, without any suggestion that either J.A., Theresa, or any of Theresa's relatives were members of a tribe or possibly eligible for membership in a tribe, did not give the trial court reason to know that J.A. was an "Indian child" as that term is defined in the Act.

DCFS properly sought additional information regarding Theresa's claim by attempting to contact the three Cherokee nation tribes. After an initial continuance of the dispositional hearing, the parties all agreed to proceed with the understanding that any order could be vacated if information became available showing J.A might fall within the Act's definition of "Indian child." By agreeing to continue, the parties, including respondent, implicitly recognized that the record afforded insufficient evidence to trigger the notice requirements of the Act. See Guardianship of J.O., 327 N.J. Super. at 317, 743 A.2d at 347 (holding that "vague and casual reference to Indian ancestry" did not trigger the notice requirements, particularly in light of the parties' failure to provide the court with any information suggesting Indian ancestry after being afforded the opportunity to do so); see also, e.g., In re Z.H., 740 N.W.2d 648, 654 (Iowa Ct. 2007)) (finding no "reason to believe" child was an "Indian child," and therefore no need to follow the notice requirements given (1) the timing of the respondent's claim--on the eve of termination, (2) his previous denial of Native

American ancestry, and (3) his inability after a continuance to provide the court with any specific information as to why he now believed he was of Native American ancestry). Given the unsubstantiated and vague evidence in this case, the trial court did not have "reason to know" that J.A. may be an Indian child. As such, the notice provisions of the Act were not triggered.

If, at some later point in response to DCFS's inquiry, the Cherokee nation indicates the possibility that J.A. is eligible for membership and therefore may be an "Indian child" as defined in the Act, or if other evidence comes to light suggesting J.A. is an Indian child, any parent, Indian custodian, or the tribe may petition any court of competent jurisdiction to invalidate the dispositional order upon showing that section 1912 of the Act was violated. See 25 U.S.C. §1914 (2000); Kahlen W., 233 Cal. App. 3d at 1424, 285 Cal. Rptr. at 513 (where the respondent did not allege she was a member of the Miwok Tribe until after the proceedings had already begun, the court held that notice is mandatory regardless of how late in the proceeding a child's potential eligibility for membership in the tribe is uncovered). However, on this record, and in light of the current lack of evidence pertaining to J.A.'s status as an Indian child, this court will not invalidate the trial court's dispositional ruling.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

- 19 -

Affirmed.

APPLETON, P.J., and TURNER, J. concur.