# ILLINOIS OFFICIAL REPORTS

*In re K.T.*, 2013 IL App (3d) 120969

| | |
|---|---|
| Appellate Court Caption | *In re* K.T., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Victoria S., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-12-0969 |
| Filed | June 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In juvenile proceedings involving a child who was a member of the Seminole Indian tribe, the trial court's adjudication and dispositional orders were reversed and the cause was remanded for a new hearing after the Indian tribe is provided with notice pursuant to the federal Indian Child Welfare Act, since there was nothing in the record showing that the tribe was given the notice required by the Act. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 12-JA-230; the Hon. Mark E. Gilles, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Dana M. Kelly, of Peoria, for appellant.

Jerry Brady, State's Attorney, of Peoria (Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel            JUSTICE LYTTON delivered the judgment of the court, with opinion.

Justices O'Brien and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1      Respondent is the mother of K.T. K.T. is a member of the Seminole Indian tribe. The State filed a juvenile petition alleging that K.T. was neglected because her environment was injurious to her welfare, in part, as a result of respondent's behavior. At respondent's combined adjudication and dispositional hearing, the Illinois Department of Children and Family Services (DCFS) notified the court that K.T.'s Indian tribe was interested in becoming a party to the case. Respondent then moved for a continuance so that the tribe could enter the case. The trial court denied respondent's motion. We reverse and remand.

¶ 2      On September 27, 2012, the State filed a juvenile petition, alleging that K.T. was neglected because her environment was injurious to her welfare. Specifically, the petition alleged that (1) on September 24, 2012, respondent and her husband, David S., became involved in a domestic violence incident with K.T. that resulted in K.T. being struck and injured, (2) David S. has a criminal history that includes many convictions, dating back to 1984; and (3) respondent refused to cooperate with DCFS to develop a safety plan. The trial court entered an order for temporary shelter care placing K.T. in the temporary custody of DCFS.

¶ 3      On October 5, 2012, respondent stipulated that the State could prove the allegations contained in the petition. On the same date, respondent notified the court that K.T.'s father was a full-blood Indian of the Seminole Creek Nation.

¶ 4      The combined adjudication and dispositional hearing was held on November 16, 2012. At the beginning of the hearing, the attorney for DCFS notified the court that it received confirmation that K.T. is a member of the Seminole tribe. A "Certificate of Degree of Indian Blood" issued by the United States Department of the Interior, Bureau of Indian Affairs, states that K.T. is of 5/32 degree Seminole-Creek Indian blood. In 2005, K.T. was issued a membership card for the Seminole Nation Tribe of Oklahoma. The Seminole Nation of Oklahoma's enrollment office determined that K.T.'s Seminole Indian blood quantum is one-eighth and that she is a member of the Hecete Band of the Seminole Nation.

¶ 5      DCFS explained that its coordinator for Indian children spoke to a representative of

K.T.'s Indian tribe. The tribe indicated that it was interested in becoming a party to K.T.'s case but had not yet officially done so. According to DCFS, the tribe was informed of the court date for the combined adjudication and dispositional hearing. Based on the information DCFS provided to the court, respondent requested a continuance so that the tribe could enter the case before the hearing took place. The State objected to a continuance, stating: "This could be a very lengthy process before [the tribe] pull[s] the trigger on whatever it is they're going to do." DCFS also objected to a continuance, arguing that there was no reason to delay the hearing since the tribe was informed of the hearing date and took no action to intervene before the hearing. The trial court denied respondent's request for a continuance and proceeded with the hearing.

¶ 6    After the State presented its case, the trial court found that all of the allegations of the juvenile petition had been proven and that K.T. was a neglected minor and her environment was injurious to her welfare. The court then proceeded to the dispositional phase of the hearing. After considering the evidence presented, the trial court ruled that respondent was unfit based on the contents of the juvenile petition. The trial court made K.T. a ward of the court and named DCFS as her guardian.

¶ 7    In its dispositional order, the court found that K.T. "is an enrolled member of Seminole tribe." Nevertheless, the court ordered that K.T.'s current foster home placement with a non-Indian family was not to be changed without court approval "unless DCFS finds imminent danger to the minor's physical or emotional well-being."

¶ 8    Respondent argues that the court's adjudication and dispositional orders should be invalidated because the court violated the Indian Child Welfare Act of 1978 (Act) (25 U.S.C. § 1901 *et seq.* (2006)) by failing to give K.T.'s Indian tribe proper notice and adequate time to intervene before the combined adjudication and dispositional hearing.

¶ 9    Whether the trial court was required by the Act to give notice to K.T.'s Indian tribe and the sufficiency of any such notice are issues of statutory interpretation, which we review *de novo*. See *In re T.A.*, 378 Ill. App. 3d 1083, 1087 (2008).

¶ 10   In 1978, Congress enacted the Act in response to growing concerns over "abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989). The stated purpose of the Act is

"to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." 25 U.S.C. § 1902 (2006).

¶ 11   The Act establishes various substantive and procedural protections intended to govern child custody proceedings involving Indian children. See 25 U.S.C. §§ 1911 to 1915 (2006). The term "child custody proceeding" includes " 'foster care placement' which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement

in a foster home *** where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." 25 U.S.C. § 1903(1)(i) (2006). The Act defines "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4) (2006).

¶ 12 To ensure that the rights of Indian children and Indian tribes are protected, "[i]n any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding." 25 U.S.C. § 1911(c) (2006). The right of a tribe to intervene would be meaningless without notice. *In re Gabriel G.*, 142 Cal. Rptr. 3d 344, 347 (Cal. Ct. App. 2012). Accordingly, the Act contains a notice provision that provides in relevant part:

"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. *** No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe ***: Provided, That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." 25 U.S.C. § 1912(a) (2006).

¶ 13 Pursuant to the plain language of section 1912 of the Act, a trial court may not conduct any foster care placement or termination of parental rights proceeding until 10 days after notice, sent by registered mail with return receipt requested, is received by the tribe, parent or custodian. *In re Morris*, 815 N.W.2d 62, 72 (Mich. 2012). If, however, the tribe, parent or custodian responds within that 10-day period and requests additional time, the foster care placement or termination of parental rights proceeding may not occur for an additional 20 days. *Id.* at 73. At most, complying with section 1912 of the Act will extend the proceedings by 30 days after the date the tribe receives notice. *Id.*

¶ 14 In order to establish compliance with the Act's notice provision, trial courts have a duty to ensure that the record includes, at a minimum, (1) the original or a copy of the actual notice sent by registered mail pursuant to section 1912, and (2) the original or a legible copy of the return receipt or other proof of service. *Id.* at 78. A copy of the actual notice is necessary to determine if the contents of the notice provided sufficient, accurate information, including an explicit statement regarding the right of the tribe, parent or Indian custodian to intervene in the proceeding. *Id.* A copy of the return receipt is necessary to determine if the proper party received the notice and the date on which the notice was received. *Id.* Without both documents in the record, a reviewing court cannot determine if there was compliance with the Act. *Id.*

¶ 15 The Act contains a powerful enforcement provision, which allows any parent or Indian custodian from whose custody an Indian child was removed to petition the court to invalidate the foster care placement or termination of parental rights if the court violated any provisions

-4-

included in section 1911, 1912, or 1913 of the Act. 25 U.S.C. § 1914 (2006). Thus, if a court fails to provide notice as required by section 1912 of the Act, the proper remedy is to reverse the trial court's orders concerning foster care placement or termination of parental rights and begin the proceedings anew in compliance with the requirements of the Act. See *Morris*, 815 N.W.2d at 83; *People ex rel. South Dakota Department of Social Services*, 510 N.W.2d 119, 124-25 (S.D. 1993); *In re Termination of Parental Rights of D.S.*, 577 N.E.2d 572, 575-76 (Ind. 1991); *In re B.R.*, 97 Cal. Rptr. 3d 890, 898 (Cal. Ct. App. 2009); *In re H.D.*, 729 P.2d 1234, 1240 (Kan. Ct. App. 1986).

¶ 16 Here, there is no dispute that K.T. is an "Indian child." Documents in the record show that K.T. was issued a membership card from the Seminole Nation Tribe of Oklahoma, and the trial court specifically found that K.T. "is an enrolled member of Seminole tribe." Further, because K.T. was to remain in the custody of DCFS and in a foster home, the trial court's orders finding K.T. neglected and respondent unfit constituted "foster care placement" under the Act. Thus, the court was required to comply with the provisions of the Act, including the notice provision of section 1912, before conducting the combined adjudication and dispositional hearing. See 25 U.S.C. § 1912(a) (2006).

¶ 17 In this case, the record is devoid of any documentation showing that the court complied with section 1912 of the Act. The record does not contain a copy of any written notice sent to K.T.'s Indian tribe or a copy of a return receipt from any such notice. The only notice referenced at the combined adjudication and dispositional hearing came from the DCFS attorney who stated that the DCFS coordinator for Indian children had contacted the tribe and notified it of the hearing date. This was not enough. See *In re Kahlen W.*, 285 Cal. Rptr. 507, 512 (Cal. Ct. App. 1991) (phone calls to an Indian tribe do not provide adequate notice under the Act). The tribe should have been notified in writing of the proceeding and its right to intervene, by registered mail with return receipt requested. 25 U.S.C. § 1912(a) (2006). Since there is no evidence in the record that K.T.'s Indian tribe was provided with the notice required by the Act, we reverse the trial court's adjudication and dispositional orders and remand for the trial court to conduct a new hearing only after K.T.'s Indian tribe has been provided with notice that complies with the Act.

¶ 18 The judgment of the trial court of Peoria County is reversed, and the cause is remanded for additional proceedings consistent with this decision.

¶ 19 Reversed and remanded.