[No. F039428. Fifth Dist. July 12, 2002.]

In re EDWARD H., JR., et al., Persons Coming Under the Juvenile Court Law.
STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, Plaintiff and Respondent, v.
CYNTHIA E., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III of the Discussion.

**COUNSEL**

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael H. Krausnick, County Counsel, and Carrie Stephens, Deputy County Counsel, Plaintiff and Respondent.

**OPINION**

**VARTABEDIAN, Acting P. J.**—Cynthia E. appeals from orders terminating her parental rights (Welf. & Inst. Code, § 366.26) as to her children, Brittany, D'Andre, Kiah, Tailour and Edward, Jr.[1] She contends the termination orders were erroneous due to alleged noncompliance with Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) notice requirements. She additionally claims the juvenile court failed to find termination would be detrimental and improperly denied her request for a bonding study. In the

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

published portion of this opinion, we hold proper notice to some but not all possible tribes in which a dependent child may be eligible for membership does not violate the ICWA provided the Bureau of Indian Affairs also receives notice pursuant to 25 United States Code section 1912. On review, we will affirm.

## PROCEDURAL AND FACTUAL HISTORY

The children in this case, who presently range in age from five and one-half to 17 years, have been dependent children of the juvenile court for more than five years. The court previously determined they came within its jurisdiction under section 300, subdivisions (b) and (g), in that appellant was unable to care for them due to her substance abuse and arrest for child abuse; the father of the two youngest, Tailour and Edward, Jr., had disciplined one of the older children by choking him; and the older children had previously been adjudged dependents.

Despite lengthy efforts, reunification ultimately failed. By February 2000, the court selected a permanent plan of legal guardianship for the children. Their guardian was a maternal aunt with whom they lived out of state.

Although the authorities from the aunt's state initially recommended guardianship over adoption, that recommendation changed to adoption by the end of 2000. Consequently in January 2001, the Stanislaus County superior court granted a modification petition (§ 388) setting a new hearing to select and implement a permanent plan for the children (§ 366.26). The court scheduled that hearing for an April 2001 date.

Meanwhile at a February 20th hearing, counsel for the father urged the court to order a bonding study. Appellant's counsel joined in that request. Counsel for the father argued, "[A]ll of the witnesses, all of the children, all of the people involved in this matter are in another state." Counsel also cited a "very positive letter" regarding her client's visitation.[2] County counsel opposed the request. The court in turn denied the request.

The court eventually conducted the section 366.26 hearing between late August and early October 2001. At its conclusion, the court found all of the children adoptable and terminated parental rights. Appellant subsequently filed a notice of appeal from the October 2, 2001, orders terminating her parental rights.

---

[2]The record contains neither the letter nor any other documentation in support of the bonding request.

DISCUSSION

## I. *ICWA Notice*

In March 2001, while the section 366.26 hearing was pending, Edward H., Sr., father of Tailour and, Edward, Jr., informed a social worker that he had reason to believe he belonged to "a tribe out of Arkansas," the Choctaw Tribe. This led respondent Stanislaus County Community Services Agency (agency) to make an inquiry of and give notice of these dependency proceedings to the Bureau of Indian Affairs (Bureau), as agent for the Secretary of the Interior, the Choctaw Nation of Oklahoma and the Mississippi Band of Choctaw Indians. When neither the Bureau nor the two tribes declared the children to be Indian within the meaning of the ICWA, the court at the section 366.26 hearing ruled the ICWA did not apply.

■ Appellant complains the agency also should have given notice to the Jena Band of Choctaw Indians. Because the agency did not notify all three federally recognized Choctaw Tribes, appellant contends the agency failed to fulfill ICWA notice requirements thereby requiring reversal of the termination orders in Tailour's and Edward, Jr.'s, cases. We disagree.

Although appellant claims an ICWA violation, she in fact relies upon certain California Rules of Court, which state:

"*Notice shall be sent to all tribes* of which the child may be a member or eligible for membership" (Cal. Rules of Court, rule 1439(f)(3), italics added); and "Determination of tribal membership or eligibility for membership is made exclusively by the tribe." (Cal. Rules of Court, rule 1439(g).)

Left unsaid in appellant's argument are several points which, considered in toto, persuade us that the agency did not violate the ICWA in this case. Rather we hold proper notice to some but not all possible tribes in which a dependent child may be eligible for membership does not violate the ICWA provided the agency also gives notice pursuant to 25 United States Code section 1912 to the Bureau.

First, California Rules of Court, rule 1439(f)(3), which requires notice to "all tribes of which the child may be a member or eligible for membership," does not track the federal statutory language on this issue. Instead, 25 United States Code section 1912(a) requires, in relevant part, notice to "the Indian child's tribe." Specifically, the federal law provides in relevant part: "In any

involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, *the party* seeking the foster care placement of, or termination of parental rights to, an Indian child *shall notify* the parent or Indian custodian and the *Indian child's tribe*, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (Italics added.)

Second, the federal statute (25 U.S.C. § 1912(a)), as well as the rule of court (Cal. Rules of Court, rule 1439(f)(4)), authorizes service of notice upon the Secretary of the Interior "[*i*]f the identity or location of . . . the tribe cannot be determined . . . ." (Italics added.) The Secretary in turn "shall have fifteen days after receipt to provide the requisite notice to the parent or Indian custodian and the tribe." (25 U.S.C. § 1912(a).)

"Under the statutory scheme, the burden of identifying and providing notice to the proper tribe in these circumstances *shifts* from the state court to the Secretary, who presumably has resources and skill with which to ferret out the necessary information." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1422 [285 Cal.Rptr. 507].)

Here, the identity of the actual Choctaw Tribe in which Tailour and Edward, Jr., might be eligible for membership was unknown. At most, the father thought it was a tribe out of Arkansas. Notably, none of the three federally recognized Choctaw Tribes are located in Arkansas.[3] To the extent the agency gave notice to the two Choctaw Tribes who had designated an agent for service of process, we note in passing that such designation is discretionary and not mandatory. (25 C.F.R. § 23.12 (2001) ["Any Indian tribe . . . *may* designate . . . an agent for service of notice" (italics added)].)

Third, the rule of court which discusses the determination of Indian child status also provides: "Absent a contrary determination by the tribe, a determination by the BIA [Bureau of Indian Affairs, as agent for the Secretary of the Interior] that a child is or is not an Indian is conclusive." (Cal. Rules of Court, rule 1439(g)(4).)

In other words, even according to this state's rules of court, the Bureau, as well as an Indian tribe, can conclusively determine whether a child is an Indian.

Fourth, the decisions to which appellant cites as compelling reversal in Tailour's and Edward, Jr.'s, cases are factually and legally distinguishable.

---

[3]Appellant's request for judicial notice of the Jena Band's published address is granted. (Evid. Code, § 452.)

(*In re Marinna J.* (2001) 90 Cal.App.4th 731, 739-740 [109 Cal.Rptr.2d 267]; *In re Desiree F.* (2000) 83 Cal.App.4th 460, 475-476 [99 Cal.Rptr.2d 688]; *In re Junious M.* (1983) 144 Cal.App.3d 786, 796 [193 Cal.Rptr. 40].) To put a point on these cases, none of them held it was prejudical error for an agency to serve notice on the Bureau and some, but not all, of the tribes in which a child may at least be eligible for membership. In *In re Marinna J., supra,* 90 Cal.App.4th at pages 739-740, despite information that a dependent child could be Cherokee, there was no indication in the record that notice was sent to any Cherokee tribe or to the Bureau. In *In re Desiree F., supra,* 83 Cal.App.4th at pages 475-476, although there was evidence a dependent child could be eligible for membership in more than one tribe, no notice was sent to either tribe or to the Bureau. In *In re Junious M., supra,* 144 Cal.App.3d at pages 795-796, the court decided a dependent child was not Indian even though no notice was given to anyone.

Fifth and finally, appellant overlooks a decision from this court which implicitly endorses notice to the Bureau when the correct band of a tribe cannot be identified. In *In re Kahlen W., supra,* 233 Cal.App.3d at page 1420, a mother's report that she was a Miwok Tribe member led a social services department to telephone the Bureau and obtain the name of the three bands of the Miwok Tribe in the area.[4] A social worker in turn spoke with two of the three bands. Both bands contacted needed a roll number which the mother did not provide in order to determine to what band the family belonged. The department never gave formal notice of the proceedings and of the right to intervene, pursuant to the ICWA, to any of the Miwok bands or to the Bureau. In relevant part to the present appeal, this court stated: "DSS's inability to identify the correct band of the Miwok Tribe did not relieve its obligation to comply with the Act. DSS remained obligated to send notice to the Secretary in lieu of the tribe. It failed to do so. The telephone call made to the Bureau by [the social worker] was insufficient under the statute to provide the requisite notice." (*In re Kahlen W., supra,* 233 Cal.App.3d at p. 1423.)

Under these circumstances, we reiterate the agency did not violate the ICWA by giving notice to the Bureau and two of the three federally recognized Choctaw Tribes.

II., III.*

．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．　．

[4] The agency was, incidentally, Stanislaus County Department of Social Services (DSS), the predecessor of respondent agency in this case.

*See footnote, *ante,* page 1.

## DISPOSITION

The orders terminating parental rights are affirmed.

Buckley, J., and Cornell, J., concurred.

A petition for a rehearing was denied July 30, 2002, and appellant's petition for review by the Supreme Court was denied September 25, 2002.