Filed 8/26/13  In re Destiny M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DESTINY M., a Person Coming Under the Juvenile Court Law. | B246944 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK91181) |
| Plaintiff and Respondent, | |
| v. | |
| ASHLEY J., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee.  Affirmed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

Ashley J., mother of 13-month-old Destiny M., appeals from the disposition order of the juvenile court. She contends that the court erred by not ensuring proper notification under the Indian Child Welfare Act, title 25 of the United States Code section 1901 et seq. (ICWA) (Welf. & Inst. Code, § 224 et seq.).[1] We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The Department of Children and Family Services detained Destiny based on reports of extreme domestic violence between her parents. Father[2] is serving a nine-year prison sentence for domestic violence.

At the detention hearing, father filed a notification of Indian status stating he is Native American because his mother, Nora M., and Destiny's maternal great-grandparents are all full-blood Navajo. Father did not know the birth dates or places, or current or past residences of Destiny's great-grandparents. The juvenile court detained Destiny and ordered her released to mother's care. The court then ordered the Department to contact father's family to investigate the claim of Native American Heritage.

At the hearing held in February 2012, the paternal grandmother Nora M. informed the juvenile court that she is a registered member of the Navajo Nation and relayed her Navajo "census number." Nora M. confirmed that father is also a registered member of the Navajo Nation but she did not have his census number with her. The court ordered the Department to further investigate the possible application of ICWA. In particular, the court ordered the Department to interview Destiny's grandparents and any known relatives and to notify the appropriate tribes and the Bureau of Indian Affairs (BIA).

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[2] Father D.M. is not a party to this appeal.

The juvenile court eventually received a Certificate of Navajo Indian Blood from the Navajo Nation issued for father and certification from the BIA's Shiprock Agency that Destiny's grandmother Nora M. is listed on the Navajo Nation census rolls. The court declared that Destiny fell within the purview of ICWA.

The Department sent ICWA notices on April 30, 2012 to the ICWA Representative of the Navajo Colorado River Tribal Council, the Navajo Nation, and the Washington, DC and Sacramento, CA offices of the BIA. The notices contained father's and Nora M.'s dates and places of birth, current and former addresses, and tribal enrollment numbers. Destiny's great-grandfather's current address was listed as Post Office box in Shiprock, New Mexico (i.e., on the Navajo Reservation). The section of the notification form for Destiny's great-grandmother indicated the ancestor was deceased and her place of death was unknown because " 'Speaking of the death' is against her culture." The Department's notice indicated that all of the remaining information about the great-grandparents was "Unknown," but added that Destiny's paternal great-grandparents are "full-blooded" Navajo and so their daughter, Destiny's grandmother Nora M., is 100 percent Navajo and father is 50 percent Navajo.

At the adjudication hearing, held in May 2012, the juvenile court found ICWA notices had been given, sustained the petition, and declared Destiny a dependent under section 300, subdivisions (a) and (b). Indicating it could not proceed with the disposition hearing until the Tribe responded to the notices, the court ordered the Department to prepare a Tribal Expert Letter and give notice of the proceeding to the Navajo Nation. The court observed that Destiny was with mother, which was a "preferred ICWA placement."

The Colorado River Indian Tribes responded to the notices indicating that Destiny and her relatives are not enrolled members or eligible for enrollment with that Tribe. The BIA acknowledged receipt of the ICWA notices. The BIA determined that the Department had "established the child's Tribal information" and referred the Department to the Tribe to determine tribal eligibility. By the end of May 2012, the Department had received all of the return receipts indicating that the notices had been received.

3

At the July 2012 hearing and the August 2012 disposition hearing, the juvenile court noted that all ICWA notices had been sent and received. The court declared that "this is a non-ICWA case." (Capitalization omitted.)

Six month later in January 2013, the juvenile court sustained a subsequent petition (§ 342) alleging mother's failure to protect Destiny from father. (§ 300, subd. (b).) The court removed Destiny from mother's custody and placed the child with her maternal grandmother. After the court issued disposition orders, mother filed her notice of appeal.

In April 2013, while this appeal was being processed, the juvenile court granted mother's section 388 petition and returned Destiny to mother's custody.

CONTENTIONS

Mother contends the juvenile court violated the ICWA notice requirements.

DISCUSSION

1. *The ICWA notice requirements*

"In 1978, Congress passed ICWA, which is designed 'to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children "in . . . homes which will reflect the unique values of Indian culture . . . ." ' [Citations.]" (*Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 783; 25 U.S.C. § 1902.)

A key component of ICWA is notice (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421), which requires, "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking *the foster care placement of, or termination of parental rights to*, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912(a), italics added.)

This notice "enables the tribe to investigate and determine whether the minor is an Indian child" and "advises the tribe of the pending proceedings and its right to intervene or assume tribal jurisdiction." (*In re Desiree F.* (2000) 83 Cal.App.4th 460, 470.)

4

Failure to provide the necessary notice requires invalidation of actions taken in violation of ICWA. (*Id.* at p. 472.)

"ICWA notice requirements are strictly construed. [Citation.] The notice sent to the BIA and/or Indian tribes must contain enough information to be meaningful. [Citation.] The notice must include: *if known*, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition. [Citation.] To enable the juvenile court to review whether sufficient information was supplied, Agency must file with the court the ICWA notice, return receipts and responses received from the BIA and tribes. [Citation.]

"It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage. [Citation.] Notice to the tribe must include *available* information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data." (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703, italics added.)

Asserted errors in ICWA notices are subject to the harmless error analysis. (*Nicole K. v. Superior Court*, *supra*, 146 Cal.App.4th at p. 784.)

2. *The omissions from the ICWA notices cited by mother, if erroneous, were harmless*.

Mother does not challenge any of the jurisdictional findings or the disposition orders. She contends only that the juvenile court's finding that the ICWA notices were sufficient was erroneous because the Department omitted much of the information about Destiny's great-grandparents and failed to attach father's and Nora M.'s enrollment certificates.

However, apart from the fact it is not obvious from the record that father's and Nora M.'s enrollment certificates were omitted from the ICWA notices, any omission is

5

harmless.  There is nothing on the certificates that was not included in the ICWA notices, except the date father and Nora M. were listed on the Navajo census roll.  Otherwise, the ICWA notices included all of the information from the certificates, namely, the dates of birth and percentage of Navajo blood for father and Nora M.  Most important, *the ICWA notices included the Navajo Nation's roll number enabling the Tribe to determine at once father's and Nora M.'s membership in that Tribe.*

Likewise unavailing is mother's argument that the ICWA notices were deficient because they omitted much of Destiny's great-grandparents' information.  According to section 224.2, notice must include "[a]ll names *known* . . . and any other identifying information, *if known*."  (§ 224.2, subd. (a)(5)(C), italics added.)  Similarly, the federal regulations provide that "In order to establish tribal identity, it is necessary to provide *as much information as is known* on the Indian child's direct lineal ancestors including, but not limited to, the information delineated at paragraph (d)(1) through (4) of this section." (25 C.F.R. § 23.11(b) (2012), italics added.)[3]  The regulations require inclusion of specified information, "*if known*."  (25 C.F.R. § 23.11(d)(3) (2012), italics added; accord, § 224.2, subd. (a)(5)(C).)  Thus, the Department's obligation is to provide known and meaningful information.  (*In re Francisco W.*, *supra*, 139 Cal.App.4th at p. 703.)

The Department met this obligation.  Destiny is claiming tribal eligibility through her father and grandmother, Nora M.  Father and Nora M. are both included in the Navajo Indian Census Roll and Destiny's great-grandfather has a post office box on the Navajo Reservation.  The Navajo Nation received the ICWA notice and did not indicate it had insufficient information to ascertain Destiny's eligibility for enrollment.  Thus, the information contained in the ICWA notice in this case was sufficient for the Tribe to

---

[3]    25 Code of Federal Regulations section 23.11(d)(3) (2012) provides in relevant part, notice "shall include the following information, *if known*:  [¶] . . . [¶]  (3) All names *known*, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information."  (Italics added.)

6

investigate Destiny's eligibility for tribal enrollment and determine whether to intervene in the proceedings. (25 U.S.C. § 1912(a).) Under these circumstances, the ICWA notices that were sent are not deficient because unknown information about Destiny's great-grandparents was not included. The absence of additional information about Destiny's great-grandparents is harmless.

3. *The timing of the notices was not error.*

Mother next argues that at the time the ICWA notices were sent, Destiny was not in foster care. She argues the Department instead should have sent the notices *after* the court detained Destiny from mother based on the subsequent petition (§ 342).

Section 224.3 of the California ICWA reads, "The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings . . . *if the child is at risk of entering foster care or is in foster care*." (§ 224.3, subd. (a), italics added; accord, 25 U.S.C. § 1912(a).)

Section 224.2, governing the contents and time of notification, requires notice to be sent "in an Indian child custody proceeding under this code . . . ." (§ 224.2, subd. (a).) An " 'Indian child custody proceeding' " is defined in California as "a 'child custody proceeding' within the meaning of Section 1903 of the Indian Child Welfare Act," and includes a voluntary or involuntary proceeding that may result in an Indian child's "temporary or long-term foster care or guardianship placement, termination of parental rights, preadoptive placement after termination of parental rights, or adoptive placement." (§ 224.1, subd. (d).) The federal court defines an Indian " 'child custody proceeding' " as "(i) 'foster care placement' . . . [¶] (ii) 'termination of parental rights' . . . [¶] (iii) 'preadoptive placement' . . . and [¶] (iv) 'adoptive placement' . . . ." (25 U.S.C. § 1903(1).)

Synthesized, the California and federal ICWA expect notice to the child's tribe only when the child is either (1) "at risk of entering foster care or is in foster care" (§ 224.3, subd. (a)), or (2) is in an Indian child custody proceeding, i.e., in a proceeding

7

in which the child may be placed in temporary or long-term foster care or guardianship, or adoptive placement, or where the parental rights may be terminated. (§ 224.1, subd. (d); 25 U.S.C. § 1903(1).) Courts requiring notice to the tribe have involved children who were removed from their parents' custody and placed in foster care. (See, e.g., *Justin L. v. Superior Court* (2008) 165 Cal.App.4th 1406; *In re A.B.* (2008) 164 Cal.App.4th 832; *Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262.)

Here, at the commencement of the dependency, the juvenile court placed Destiny *with mother*. That is, Destiny was not placed in temporary or long-term foster care, a guardianship, or in any potential adoptive home. On that basis, the juvenile court properly declared in July 2012 that "this is a non-ICWA case." (Capitalization omitted.) Stated otherwise, this dependency is not an "Indian child custody proceeding" as that phrase is defined by the California and federal statutes and so the notice requirements of ICWA were not triggered. Although the juvenile court did remove Destiny from her mother in January 2013 after sustaining the subsequent petition, we have taken judicial notice of the fact that the court *returned the child to mother's custody* in April 2013. Consequently, notice was properly sent for the brief four-month period during which Destiny was removed from mother's custody. Otherwise, notwithstanding notices were sent to the BIA and the Navajo Nation, this is not a "Indian child custody proceeding" requiring such notices.

Our conclusion here does not prejudice the Tribe's or Destiny's rights or interests. Should the juvenile court later remove Destiny from mother's custody to place her in foster care, then the Department's formal notification obligation will arise again. However, at this juncture, mother has not demonstrated juvenile court error under ICWA.

DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:



KLEIN, P. J.



CROSKEY, J.