Filed 10/19/15  In re K.D. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.D. et al., Persons Coming Under the Juvenile Court Law. | H041910 (Santa Cruz County Super. Ct. No. DP002941) |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J. D., <br><br> Defendant and Appellant. | |

On July 31, 2014, the Santa Cruz County Human Services Department (Department) filed a petition involving newborn minor K.D. (the minor) under Welfare and Institutions Code section 300.[1]  The Department alleged that K.D. (Mother) and the alleged father J.D. (Father) had failed to protect the minor.  (§ 300, subd. (b).)  The bases for the petition included (1) Mother's and Father's substance abuse problems, including Mother's use of methamphetamine throughout her pregnancy and her use of heroin

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

shortly before delivering the minor; (2) Mother's having tested positive for methamphetamine and opiates at the time the minor was delivered; (3) the minor's having tested positive at birth for opiates; (4) Mother's failure to obtain prenatal medical care; (5) Father's history of violence, including a domestic violence incident involving Mother when she was 32-weeks pregnant; and (6) Father's mental health issues.

At the October 2014 jurisdictional hearing (which neither parent attended), the court sustained the allegations of the petition and ordered the minor placed outside the home. After a contested dispositional hearing on December 12, 2014, the court ordered reunification services for Father under a case plan that included requirements that he receive substance abuse counseling and testing, attend domestic violence and parenting courses, and be evaluated by two psychologists.

On appeal from the dispositional order, Father contends the juvenile court erred by failing to provide reasonable reunification services that would accommodate his particular circumstances, including his physical disability, homelessness, and his lack of a driver's license that made travel between Hollister and Santa Cruz very difficult. Father also claims that the notice provided by the Department under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.; the ICWA) was defective.

We conclude that Father's challenge to the dispositional order is moot. We also conclude—based upon the Department's concession—that the Department's ICWA notification was defective. Accordingly, we will conditionally reverse the dispositional order with directions that the trial court order the Department to (1) serve a notice that complies with the requirements of the ICWA, and (2) file documentation for the court's inspection. Upon proper notice, the court shall reinstate the dispositional order. If, after proper notice, the court finds the minor is an Indian child, the court shall proceed in conformity with the ICWA. If, after proper notice, the court finds the minor is not an Indian child, the dispositional order of December 12, 2014, shall be reinstated.

FACTS AND PROCEDURAL HISTORY[2]

I.      *July 2014 Petition and Detention Hearing*

On July 31, 2014, the Department filed a petition concerning the minor alleging, among other things, that the Santa Cruz Sheriff's Department had placed the minor in protective custody after her birth because Mother tested positive for methamphetamine and opiates and the minor tested positive for opiates. The Department alleged that Mother's substance abuse history dated back to her childhood. She used methamphetamine throughout her pregnancy, and she used heroin during the last two weeks she was pregnant and up to two hours before she gave birth. Mother also failed to obtain prenatal care.

The Department alleged that Father also used methamphetamine and had a substance abuse problem that dated back to his childhood. Mother reported to the social worker that Father was bipolar and had prescriptions for amphetamines and seroquel. Mother stated that while she was pregnant, Father would regularly give her his prescribed amphetamines and sometimes laced her food with it. Mother also reported that she and Father regularly took methamphetamines while she was pregnant, and Father sometimes forced Mother to use the drug with him. The Department also reported that Father had a history of violence dating back to 2004. On June 26, 2014, Father engaged in domestic violence with Mother when she was 32-weeks pregnant, and she sustained injuries during the incident.

---

[2] The recitation of the facts and procedural history in this case is largely derived from the prior separate appeal filed by Father in the underlying dependency proceeding. (*In re K.D.*, H041726.) Although that appeal has been dismissed, on our own motion, we take judicial notice of the clerk's and reporter's transcripts filed in the prior appeal, pursuant to Evidence Code sections 452, subdivision (d)(1) and 459, subdivision (a). (See *Stephenson v. Drever* (1997) 16 Cal.4th 1167, 1170, fn. 1.)

On August 5, 2014, the court found that a prima facie case had been made that the minor came within section 300. It ordered that the minor be detained. The court also ordered genetic testing of Father regarding paternity.

II.    *September 2014 Jurisdiction/Disposition Reports*

A.    Jurisdiction/Disposition Report

In its September 2, 2014 jurisdictional/dispositional report, the Department reported that the minor was residing in a concurrent home in Santa Cruz County and that Father had tested positive on August 1, 2014, for amphetamine, methamphetamine, and marijuana. The Department also reported that Father had failed to test on three occasions in August and had also failed to submit to random drug testing on four days that month.

Mother reported to the Department that she was fearful of Father because of his " 'unpredictable behavior.' " She said he would periodically threaten her, and he would drive her to isolated areas and " 'ditch her.' " Mother also reported an incident while she was pregnant in which Father "pulled her out [of a car by] her hair$_{[,]}$ causing her hair to come off; Social Worker observed a bald area on the back of her head of approximately 4 inches long and 4 inches wide. This was not reported to law enforcement." The Department also reported an earlier incident of domestic violence in November 2013 in which Father assaulted Mother.

In an interview with the social worker, Father denied having used drugs with Mother during her pregnancy, and he said he did not know she had used drugs while she was pregnant. He also denied ever engaging in acts of domestic violence. Father advised the Department that he is under the care of several physicians and that he had been diagnosed with "ADHD, Post Traumatic Stress Disorder, Bipolar [Disorder], Depression, [an unspecified] life threatening illness and [] a herniated disk." Father reported that his prescription medications consisted of seroquel, risperdal, desoxyn, and cannabis.

In a supplemental memorandum filed September 23, 2014, the Department recommended that Father participate in two psychological evaluations to determine whether he would benefit from reunification services.

### III. *Interim Hearing*

At an interim setting hearing on September 2, 2014, the court, pursuant to Father's filing of a declaration of parentage, found that Father was the presumed father of the minor.

### IV. *Jurisdictional Hearing and Dispositional Hearings*

A jurisdictional and dispositional hearing took place on October 6, 2014. Mother did not attend, having previously stipulated to submit the matter. Father also did not attend the hearing, and the court denied a motion to continue made by Father's attorney.

The court sustained the allegations of the petition and found it had jurisdiction over the minor pursuant to section 300, subdivision (b). The court found by clear and convincing evidence that (1) there would be substantial danger to the minor's physical health, safety, protection, or physical or emotional well-being if she were returned home; (2) there were no reasonable means by which the minor's physical health could be protected without removing her from Mother's custody; and (3) placement of the minor with the noncustodial parent would be detrimental to the minor's safety, protection, or physical or emotional well-being. The court ordered the minor to be placed in a foster home under the care of the Department. Also, because the minor's paternal grandparents had requested placement, the court ordered the Department to continue its assessment of them for placement. The court also ordered that Mother receive family reunification

5

services, that Father receive two psychological evaluations, and that Mother and Father each receive supervised visitation of the minor a minimum of three times per week.[3]

The Department filed a report on November 18, 2014, indicating that one of Father's psychological evaluations (by Dr. Gerard Chambers) had been completed. The Department further indicated that Father was not currently participating in drug testing, had gone for an intake and a residential drug treatment program but left the site before being admitted, had ceased visiting the minor approximately three weeks earlier, and was not in communication with the Department.

In his report, Dr. Chambers indicated that "there was a lack of sufficient data presented in order to fully determine [Father's] complete diagnostic presentation." Reasons for the incomplete nature of the diagnosis included Father's evasiveness and Dr. Chambers's inability to determine the medical bases for Father's previous medication regime, which had included antipsychotic medications. Dr. Chambers stated that he "significantly question[ed] . . . whether or not [Father] can adequately care for his child in an autonomous manner within six months" because there were "a plethora of unanswered questions," such as Father's diagnosis, current medication regimen, concerns about his missed drug tests, and his lack of insight regarding his criminal history. Dr. Chambers recommended that a number of minimal requirements be met before any proposed reunification between Father and the minor.

On December 12, 2014, the court conducted a further hearing on disposition. The court heard and denied Father's request for appointment of new counsel. After hearing testimony from two witnesses, the court (1) ordered the minor continued as a dependent

---

[3] Father filed a notice of appeal from the order. Pursuant to the unopposed motion of the Department, we ordered that appeal dismissed on July 13, 2015, as having been filed prematurely. (*In re K.D.*, H041726.)

child; (2) reaffirmed the court's prior dispositional orders; (3) ordered family reunification services be provided to Father; and (4) found the case plan previously filed by the Department to be necessary and appropriate.

Father filed a notice of appeal from the dispositional order of December 12, 2014. An order from a dispositional hearing is one from which an appeal lies. (§ 395; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1150.)

DISCUSSION

I.    *Applicable Law*

A.    General Dependency Principles

Section 300 et seq. provides "a comprehensive statutory scheme establishing procedures for the juvenile court to follow when and after a child is removed from the home for the child's welfare. [Citations.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) As our high court has explained: "The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.] Although a parent's interest in the care, custody and companionship of a child is a liberty interest that may not be interfered with in the absence of a compelling state interest, the welfare of a child is a compelling state interest that a state has not only a right, but a duty, to protect. [Citations.] The Legislature has declared that California has an interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful. [Citations.] This interest is a compelling one. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.)

The court at the jurisdictional hearing must first determine whether the child, by a preponderance of the evidence, is a person described under section 300 as coming within the court's jurisdiction. (§ 355, subd. (a).) Once such a finding has been made, the court, at a dispositional hearing, must hear evidence to decide the child's disposition, i.e.,

7

whether he or she will remain in, or be removed from, the home, and the nature and extent of any limitations that will be placed upon the parents' control over the child, including educational or developmental decisions. (§ 361, subd. (a).) If at the dispositional hearing the court determines that removal of the child from the custody of the parent or guardian is appropriate, such removal order must be based upon clear and convincing evidence establishing that one of five statutory circumstances exists. (§ 361, subd. (c).) One such circumstance is the existence of substantial danger to the dependent child's "physical health, safety, protection, or physical or emotional well-being" if he or she is returned to the home. (§ 361, subd. (c)(1).)

When a dependent child is removed from parental custody, the juvenile court is ordinarily required to provide the parent with services to facilitate the reunification of the family. (§ 361.5, subd. (a); see *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 303.) Where reunification services are ordered, and where the child is under three years of age at the time of the initial removal, they generally begin with the dispositional hearing and end with the six-month review hearing (§ 366.21, subd. (e)), but shall be no longer than 12 months from the date the child entered foster care (361.5, subd. (a)(1)(B)). Although a parent may reasonably expect under most circumstances to receive reunification services for at least the periods designated under section 361.5, subdivision (a)(1), there is no entitlement to services for a prescribed minimum period. (*In re Derrick S.* (2007) 156 Cal.App.4th 436, 445-450; *In re Aryanna C.* (2005) 132 Cal.App.4th 1234, 1242-1243.)

Visitation between parents and dependent children removed from the home is a matter directly related to reunification. (*In re Julie M.* (1999) 69 Cal.App.4th 41, 49 [regular visitation of noncustodial parents with their dependent children is an "obvious prerequisite to family reunification"].) Courts are vested with broad discretion in fashioning appropriate conditions regarding visitation. (*In re Megan B.* (1991) 235 Cal.App.3d 942, 953, superseded by statute on other grounds.)

8

*II.      The Challenge to the Dispositional Order Is Moot*

Father argues the juvenile court erred in making its dispositional order to the extent it required him to travel from Hollister to Santa Cruz to comply with the requirements of his case plan. He asserts that, in granting reunification services, the court failed to specifically tailor them to his individual needs in that it did not give due consideration to his physical disabilities, homelessness, and lack of a driver's license in requiring that he travel to Santa Cruz to visit the minor and to receive services required under his case plan. He argues his "Case Plan was designed to fail . . . [since he] did not have the ability to travel . . . between Hollister and Santa Cruz on a nearly daily basis to engage in each and every one of the services the Department-approved providers called for in the Case Plan."

The Department responds that by virtue of postappeal events occurring in the dependency proceeding—namely, Father's written waiver of reunification services and the court's termination of Father's services—Father's appeal is moot. The Department, through a request for judicial notice, provided this court with copies of (1) the clerk's minutes of a hearing on March 24, 2015, and (2) an April 17, 2015 court order on the Department's petition filed under section 388. It was noted in the March 24, 2015 clerk's minutes that Father had submitted a written waiver of reunification services, and that the court had therefore terminated his reunification services. In the April 17, 2015 order, the court recited that it had previously accepted Father's waiver of reunification services. Although both of these documents referenced the written waiver, the waiver itself was not provided by the Department to this court, an omission noted by Father in his reply brief. We have obtained from the superior court a copy of the written waiver, which was filed in this dependency proceeding on March 27, 2015. By prior order dated September 28, 2015, we have on our own motion augmented the record to include (1) the March 24, 2015 clerk's minutes, (2) the April 17, 2015 court order, and (3) the written waiver filed March 27, 2015. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

9

In addressing the Department's argument and in considering the three documents in the augmented record, we have carefully considered the California Supreme Court's decision in *In re Zeth S.* (2003) 31 Cal.4th 396 (*Zeth*). *Zeth* instructs that appellate courts generally may not consider "postjudgment evidence of changed circumstances in an appeal of an order terminating parental rights," concluding that "liberal use of such evidence to reverse juvenile court judgments and remand cases for new hearings . . . violate[s] both the generally applicable rules of appellate procedure, and the express provisions of section 366.26." (*Id.* at p. 413.) Thus, absent extraordinary circumstances, *Zeth* prohibits the admission of appellate evidence (1) to show changed circumstances, or (2) to reverse the juvenile court.

Here, the postappeal material proffered by the Department does not run afoul of *Zeth*. First, the postappeal evidence is sought to be introduced in connection with a challenge to a dispositional order, not to an order terminating parental rights. Second, the proponent of the evidence is not seeking reversal of the juvenile court's order. (*Zeth S.*, *supra*, 31 Cal.4th at p. 413.) Rather, the Department asks that we consider the clerk's minutes and the order to establish that Father's appellate challenge to the dispositional order is moot. It is therefore appropriate that we consider these documents, along with Father's written waiver of reunification services. (See *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1389-1390 [appellate court may consider postjudgment evidence in determining whether an appeal has become moot]; see also *In re Salvador M.* (2005) 133 Cal.App.4th 1415, 1422 [same].)

Considering the postappeal clerk's minutes, the order, and the written waiver, it is clear that Father, in March 2015, relinquished his right to assert that he should receive reunification services. Thus, his appellate challenge to the December 2014 dispositional order, in which he contends the court did not tailor reunification services to address his specific needs, is not a justiciable controversy. (See *Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178-1179 [mootness doctrine is based upon

10

principle that "courts decide justiciable controversies and will normally not render advisory opinions"].) We therefore conclude that Father's challenge to the reunification services offered to him has been rendered moot by his waiver of these services.

*III.     Department Concedes ICWA Notice Was Deficient*

Father reported on August 1, 2014, that he might have Cherokee and/or Choctaw Indian ancestry. He told the Department that his "paternal grandmother ha[d] Cherokee Ancestry." On the same day, Mother reported that she was unaware of any Indian ancestry. On August 5, 2014, the court ordered the Department to give appropriate notice to Indian tribes and to the Bureau of Indian Affairs (BIA). On September 4, 2014, the Department mailed the ICWA-030 form to Indian tribes.

Father contends the ICWA notice was defective in that it (1) was not signed by the Department; (2) did not include the minor's birth certificate; (3) did not list Father's place of birth; and (4) "omitted crucial information for determining Indian ancestry that was available to the Department regarding the [minor's] paternal grandmother (the identified . . . link to Cherokee or Choctaw tribes) and the parents of the paternal grandmother." Father argues that since his parents (the paternal grandparents of the minor) were active throughout the dependency proceedings, the Department had the information concerning the minor's paternal grandmother to include in the ICWA notice. Father urges that the jurisdictional and dispositional orders be conditionally reversed pending the Department's giving proper ICWA notification.

The Department concedes the ICWA notice "lacked information regarding paternal relatives, despite their early participation in the dependency proceedings." It indicates that it has prepared new notices to address the deficiencies. The Department states that were this court to consider the defective notice prejudicial, then a conditional reversal and remand would be appropriate. We accept the Department's concession.

"Among the procedural safeguards imposed by [the ICWA] is the provision of notice to various parties." (*In re Levi U.* (2000) 78 Cal.App.4th 191, 196.) "Notice is a

11

key component of the congressional goal to protect and preserve Indian tribes and Indian families.  Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies."  (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)  California implements the ICWA's notice requirements through statutes and court rules.  (§§ 224-224.6, 290.1-297; Cal. Rules of Court, rules 5.480-5.487.)

The ICWA generally requires that notice be given "where the court knows or has reason to know that an Indian child is involved" in a dependency proceeding.  (25 U.S.C. § 1912 (a); see *In re W.B., Jr.* (2012) 55 Cal.4th 30, 48.)  State law similarly provides that "[i]f the court, a social worker, or probation officer knows or has reason to know that an Indian child is involved" in the dependency proceeding, notice is required.  (§ 224.2, subd. (a); *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1197.)

"Where there is reason to believe a dependent child may be an Indian child, defective ICWA notice is 'usually prejudicial' [citation], resulting in reversal and remand to the juvenile court so proper notice can be given."  (*In re Nikki R.* (2003) 106 Cal.App.4th 844, 850; see also *In re I.W.* (2009)180 Cal.App.4th 1517, 1530 [defective ICWA notice will be deemed harmless if it would have ultimately been found that juvenile was not an Indian child and the ICWA was inapplicable].)  In such instances, a court may order reversal with a limited remand to facilitate the giving of a proper ICWA notice.  (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 187.)

Based upon the omission of material information in the Department's ICWA notice, a matter conceded by the Department, we will conditionally reverse the dispositional order and remand the case to the trial court to ensure the Department's proper compliance with the notice requirements of the ICWA.  (See *In re Francisco W.* (2006) 139 Cal.App.4th 695, 704-710.)

12

DISPOSITION

The December 12, 2014 dispositional order is reversed and the case is remanded to the juvenile court with directions that it order the Department to comply with the notice provisions of the ICWA and to file all required documentation for the trial court's inspection. If, after proper notice, the court finds that the minor is an Indian child, the court shall proceed in conformity with the ICWA. If, after proper notice, the court finds that the minor is not an Indian child, the dispositional order of December 12, 2014, shall be reinstated.

_____
                                Márquez, J.

WE CONCUR:




_____
    Rushing, P. J.




_____
    Grover, J.